[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 117.]

RUCKMAN, APPELLEE, *v*. CUBBY DRILLING, INC., APPELLANT.

RIGGS, APPELLEE, *v*. CUBBY DRILLING, INC., APPELLANT.

BROSIUS, APPELLEE, *v*. CUBBY DRILLING, INC., APPELLANT.

[Cite as *Ruckman v. Cubby Drilling, Inc*., 1998-Ohio-455.]

*Workers' compensation—Employee injured in traffic accident during travel from home to remote well drilling site—Determining whether employee is a fixed-situs employee and therefore within the coming-and-going rule— Fixed-situs employee entitled to workers' compensation benefits for injuries occurring while coming and going from or to his place of employment, when.*

1.  In determining whether an employee is a fixed-situs employee and therefore within the coming-and-going rule, the focus is on whether the employee commences his or her substantial employment duties only after arriving at a specific and identifiable work place designated by his employer. That focus remains the same even though the employee may be reassigned to a different work place monthly, weekly, or even daily. Despite periodic relocation of job sites, each particular job site may constitute a fixed place of employment.

2.  A fixed-situs employee is entitled to workers' compensation benefits for injuries occurring while coming and going from or to his place of employment where the travel serves a function of the employer's business and creates a risk that is distinctive in nature from or quantitatively greater than risks common to the public. (*Littlefield v. Pillsbury Co.* [1983], 6 Ohio St.3d 389, 6 OBR 439, 453 N.E.2d 570, paragraphs one and two of the syllabus, limited and modified.)

(Nos. 96-1788, 96-1790 and 96-1791—Submitted October 7, 1997—Decided February 25, 1998.)

APPEALS from the Court of Appeals for Portage County, Nos. 95-P-0115, 95-P-0075 and 95-P-0114.

_____

{¶ 1} Cubby Drilling, Inc. ("Cubby") employees John W. Riggs III, Richard T. Brosius, and Kenneth E. Ruckman, Jr. each sustained injury from traffic accidents that occurred during travel from their homes to remote locations where Cubby had assigned the employees to drill wells. The injuries occurred as the result of two separate traffic accidents.

{¶ 2} Riggs and Brosius worked as part of a four-man drilling crew assigned to work a shift beginning at 10:30 p.m. and ending at 6:30 a.m. at a drilling site in Champion, Ohio. On the first day of their assignment, the drilling crew met in Canton, Ohio, in order to participate in a ridesharing arrangement to the Champion drilling site. Cubby neither required nor encouraged its employees to share rides; the employees independently came to this arrangement in order to share the expenses associated with driving to remote drilling sites. Regardless of how Cubby employees got themselves to the drilling sites, Cubby paid each employee a per diem bonus based on a graduated scale set by the distance between the drilling site and Cubby's Midvale home base.

{¶ 3} The traffic accident injuring Riggs and Brosius occurred on a state route in Paris, Ohio, approximately thirty minutes before the scheduled beginning of their shift at the Champion drilling site.

{¶ 4} Kenneth Ruckman received his injuries while participating in a similar ridesharing arrangement with two members of his Cubby drilling crew. The men met in Cadiz, Ohio, and started on their way to a drilling site near Mercer, Pennsylvania. The automobile accident causing Ruckman's injuries occurred on a

state route in Portage County, Ohio, approximately one hour before the scheduled beginning of the riggers' shift at their western Pennsylvania destination.

{¶ 5} In both instances, Cubby did not provide its employees with the automobiles involved in the accidents. Moreover, neither group was transporting tools or any other equipment needed for their job assignments when the accidents occurred.

{¶ 6} All three injured Cubby employees filed claims to participate in the Workers' Compensation Fund, and their participation has been allowed and upheld through the administrative process and later appeals. These cases are now before this court pursuant to the allowance of discretionary appeals.

_____

*James C. Becker* and *James E. Wilhelm, Jr.*, for appellees Kenneth E. Ruckman, Jr. and Richard T. Brosius.

*Brian & Brian, Steven J. Brian* and *Brian R. Mertes,* for appellee John W. Riggs III.

*Millisor & Nobil* and *Sara L. Rose; Garvin & Hickey, L.L.C.,* and *Michael J. Hickey,* for appellant Cubby Drilling, Inc.

*Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy* and *Marc J. Jaffy,* urging affirmance for *amicus curiae* Ohio Academy of Trial Lawyers.

_____

**COOK, J.**

{¶ 7} This case presents the court with two distinct yet interrelated issues: (1) whether the Cubby employees were fixed-situs employees within the meaning of the coming-and-going rule despite the temporary nature of their work assignments and, if they were, (2) whether the employees nevertheless overcame the presumption embodied in the coming-and-going rule by specifically demonstrating that their injuries occurred "in the course of" and "arose out of" the employment. We hold that the Cubby employees were fixed-situs employees

3

within the meaning of the coming-and-going rule, but nevertheless demonstrated that their injuries occurred in the course of and arose out of their employment, so as to permit their participation in the Workers' Compensation Fund.

{¶ 8} The coming-and-going rule is a tool used to determine whether an injury suffered by an employee in a traffic accident occurs "in the course of" and "arise[s] out of" the employment relationship so as to constitute a compensable injury under R.C. 4123.01(C). "As a general rule, an employee with a fixed place of employment, who is injured while traveling to or from his place of employment, is not entitled to participate in the Workers' Compensation Fund because the requisite causal connection between injury and the employment does not exist." *MTD Products, Inc. v. Robatin* (1991), 61 Ohio St.3d 66, 68, 572 N.E.2d 661, 663, citing *Bralley v. Daugherty* (1980), 61 Ohio St.2d 302, 15 O.O.3d 359, 401 N.E.2d 448. The rationale supporting the coming-and-going rule is that "[t]he constitution and the statute, providing for compensation from a fund created by assessments upon the industry itself, contemplate only those hazards to be encountered by the employe[e] in the discharge of the duties of his employment, and do not embrace risks and hazards, such as those of travel to and from his place of actual employment over streets and highways, which are similarly encountered by the public generally." *Indus. Comm. v. Baker* (1933), 127 Ohio St. 345, 188 N.E. 560, paragraph four of the syllabus.

{¶ 9} In determining whether an employee is a fixed-situs employee and therefore within the coming-and-going rule, the focus is on whether the employee commences his substantial employment duties only after arriving at a specific and identifiable work place designated by his employer. *Indus. Comm. v. Heil* (1931), 123 Ohio St. 604, 606-607, 176 N.E. 458, 459; 1 Larson's Workers' Compensation Law (1997) 4-194 to 4-200. Accordingly, this court has denied compensation for injuries sustained in the commute to work of a teacher who prepared lesson plans at her home (*Indus. Comm. v. Gintert* [1934], 128 Ohio St. 129, 190 N.E. 400), a

police officer who, by rule, was required to serve in his official capacity whenever needed but typically started work only after checking in at a station house (*Simerlink v. Young* [1961], 172 Ohio St. 427, 17 O.O.2d 376, 178 N.E.2d 168), a products-control manager who occasionally took work home and remained on call twenty-four hours a day (*Lohnes v. Young* [1963], 175 Ohio St. 291, 25 O.O.2d 136, 194 N.E.2d 428), and a slaughterhouse superintendent whose employer provided compensation for travel from his home to the plant. (*Heil, supra.*)

{¶ 10} The focus remains the same even though the employee may be reassigned to a different work place monthly, weekly, or even daily. Despite periodic relocation of job sites, each particular job site may constitute a fixed place of employment. See *Demko v. Admr. of Workers' Comp.* (Oct. 7, 1994), Portage App. No. 93-P-0067, unreported, at 4, 1994 WL 587963; *Hawkins v. Connor* (Aug. 12, 1983), Mercer App. No. 10-82-11, unreported, at 10, 1983 WL 7317.

{¶ 11} The evidence demonstrates that the riggers here had no duties to perform away from the drilling sites to which they were assigned. The riggers' workday began and ended at the drilling sites. Accordingly, although work at each drilling site had limited duration, it was a fixed work site within the meaning of the coming-and-going rule.

{¶ 12} Classification of the riggers as fixed-situs employees, however, does not end our inquiry. While the coming-and-going rule works well in most of its applications, a claimant may avoid its force in the rare circumstance where he can, nevertheless, demonstrate that he received an injury in the course of and arising out of his employment. See *MTD Products, supra,* 61 Ohio St.3d 66, 572 N.E.2d 661.

IN THE COURSE OF EMPLOYMENT

{¶ 13} As this court stated in *Fisher v. Mayfield* (1990), 49 Ohio St.3d 275, 277, 551 N.E.2d 1271, 1274, the statutory requirement that an injury be in the course of employment involves the time, place, and circumstances of the injury. Time, place, and circumstance, however, are factors used to determine whether the

required nexus exists between the employment relationship and the injurious activity; they are not, in themselves, the ultimate object of a course-of-employment inquiry.

{¶ 14} The phrase "in the course of employment" limits compensable injuries to those sustained by an employee while performing a required duty in the employer's service. *Indus. Comm. v. Gintert* (1934), 128 Ohio St. 129, 133-134, 190 N.E. 400, 403. "To be entitled to workmen's compensation, a workman need not necessarily be injured in the actual performance of work for his employer." *Sebek v. Cleveland Graphite Bronze Co.* (1947), 148 Ohio St. 693, 36 O.O. 282, 76 N.E.2d 892, paragraph three of the syllabus. An injury is compensable if it is sustained by an employee while that employee engages in activity that is consistent with the contract for hire and logically related to the employer's business. *Kohlmayer v. Keller* (1970), 24 Ohio St.2d 10, 12, 53 O.O.2d 6, 7, 263 N.E.2d 231, 233.

{¶ 15} In the normal context, an employee's commute to a fixed work site bears no meaningful relation to his employment contract and serves no purpose of the employer's business. That is not the case, however, where, as here, the employee travels to the premises of one of his employer's customers to satisfy a business obligation. Under the standard announced by this court in *Indus. Comm. v. Bateman* (1933), 126 Ohio St. 279, 185 N.E. 50, the riggers here have established the required relationship between employment and injury to satisfy the course-of-employment requirement:

"In order to avail himself of the provisions of our compensation law, the injuries sustained by the employe[e] must have been 'occasioned in the course of' his employment. * * * [I]f the injuries are sustained [off premises], the employe[e], acting within the scope of his employment, must, at the time of his injury, have been engaged in the promotion of his employer's business and in the furtherance of his affairs." *Id.* at paragraph two of the syllabus.

6

**{¶ 16}** The nature of the rigging business requires that drilling be done on a customer's premises. That is a necessary condition of the work contract. The riggers set up on a customer's premises, drill a well and, after completion, disassemble the derrick for transport to the next job site. Consequently, while coming to and going from a customer's premises, these employees are engaged in the promotion and furtherance of their employer's business as a condition of their employment. Accordingly, their travel is in the course of their employment.[1]

ARISING OUT OF EMPLOYMENT

**{¶ 17}** Even though the riggers' travel meets the "in the course of employment" requirement under the foregoing analysis, it will fail the definition of injury under R.C. 4123.01(C) if it cannot be said to also arise out of the employment. Satisfaction of both statutory elements is a prerequisite to recovery from the fund. *Fisher,* 49 Ohio St.3d at 277, 551 N.E.2d at 1274. "The 'arising out of' element * * * contemplates a causal connection between the injury and the employment." *Id.* at 277-278, 551 N.E.2d at 1274.

APPLICATION OF THE <em>LORD</em> TEST

**{¶ 18}** In *Fisher, id.* at 277, 551 N.E.2d at 1274, this court reaffirmed use of the *Lord v. Daugherty* (1981), 66 Ohio St.2d 441, 20 O.O.3d 376, 423 N.E.2d 96, "totality of the circumstances" test to determine whether there exists a sufficient

---

1. Although all of the parties to this action argued the significance of the per diem bonus paid to Cubby employees in relation to the course-of-employment inquiry, payment of that bonus has little influence on our determination. Although payment for travel is commonly considered to be a key factor in determining whether an employee was in the course of his or her employment while traveling to a job site (see, generally, 1 Larson at 4-255 to 4-261), characterization of such payment is far too malleable to serve as a leading factor in the course-of-employment inquiry. See *Heil, supra* (denying compensation to an employee who was injured while commuting to work despite the fact that his employer compensated him for the commute). Regardless of whether travel is a necessary component of an employee's service to his employer, compensation may be made part of his benefit package, just as an employer may choose to pay a parking allowance. Likewise, even where travel undoubtedly serves a function of the employment relationship, an employer may choose to compensate the employee for his travel indirectly, with a higher base or hourly salary. Here, we simply note that Cubby's payment of the per diem bonus is not inconsistent with our course-of-employment conclusion.

causal connection between injury and employment to justify a claimant's participation in the fund. That test requires primary analysis of the following facts and circumstances: "(1) the proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident." *Id.* at the syllabus.

{¶ 19} Application of the *Lord* factors to the present facts does not support compensation. Each accident occurred some distance away from the assigned work site. Compare *Bralley v. Daugherty* (1980), 61 Ohio St.2d 302, 15 O.O.3d 359, 401 N.E.2d 448 (denying compensation where the accident occurred one-third of a mile from the employer's plant). The employer exercised no control over the public roadways upon which the accidents occurred. Compare *MTD Products, supra,* 61 Ohio St.3d at 70, 572 N.E.2d at 665 (stating that the employer therein "did not have control over the scene of the accident: it controlled neither the public street on which the accident occurred nor the negligent driver who caused the accident"). Finally, the riggers' presence *at the scene of the accident* served little benefit to the employer. Simply put, at the time of the accidents, none of the riggers had yet arrived at a place where the work was to be performed. Although the riggers' travel was necessitated by the employer's business obligations, the accident did not occur at a location where the riggers could carry on their employer's business.

## ALTERNATE METHODS OF PROVING CAUSALITY

{¶ 20} An employee's failure to satisfy the three enumerated factors of the *Lord* test, however, does not foreclose further consideration. When applying the *Lord* test the enumerated factors are not intended to be exhaustive and the totality-of-the-circumstances test may continue to evolve. *Fisher, supra,* 49 Ohio St.3d at 279, 551 N.E.2d at 1275, fn. 2. "For example, the recreational activity cases have developed a unique group of tests, as well as the so-called 'coming and going' cases. * * * [W]orkers' compensation cases are, to a large extent, very fact specific.

As such, no one test or analysis can be said to apply to each and every factual possibility." *Id.* at 280, 572 N.E.2d at 1276.

{¶ 21} In *MTD Products, supra,* 61 Ohio St.3d at 69-70, 572 N.E.2d at 664-665, another coming-and-going case, this court applied the *Lord* three-part test as but one of the possible tests for determining whether the employee demonstrated the required causal connection to satisfy the "arising out of" element of R.C. 4123.01(C). The court also considered whether the fixed-situs employee therein fell within the "zone of employment" or the then newly recognized "special hazard" exception to the coming-and-going rule so as to satisfy R.C. 4123.01(C).

THE SPECIAL HAZARD RULE

{¶ 22} In denying recovery under the "special hazard" rule, the *MTD Products* court noted that the risk encountered by the employee therein—a left turn into the employer's premises across traffic on a congested city street—was a risk neither " 'distinctive in nature [n]or quantitatively greater than the risk common to the public.' " *Id.*, 61 Ohio St.3d at 69, 572 N.E.2d at 664, quoting *Littlefield v. Pillsbury Co.* (1983), 6 Ohio St.3d 389, 6 OBR 439, 453 N.E.2d 570, syllabus. The court, however, preserved the special hazard rule set forth in *Littlefield* to the extent that it was not in conflict with that opinion. *Id.* at 67-68, 453 N.E.2d at 663.

{¶ 23} The *MTD Products* court applied the special hazard rule as a test of causality only. It did not specifically analyze whether the employee therein was sufficiently in the course of his employment so as to satisfy R.C. 4123.01(C). Because R.C. 4123.01(C) requires an employee to satisfy both its "in the course of" and "arising out of" elements to participate in the Workers' Compensation Fund, the court's conclusion that the employee's injury did not "arise out of" the employment decided the issue.

{¶ 24} Treatment of the special hazard rule as a test of causality is consistent with the stated purpose behind the coming-and-going rule that workers' compensation insurance does "not embrace risks and hazards, such as those of

travel to and from his place of actual employment over streets and highways, which are similarly encountered by the public generally." *Baker, supra,* 127 Ohio St. 345, 188 N.E. 560, paragraph four of the syllabus.

THE *LITTLEFIELD* SYLLABUS STATES A RULE OF CAUSATION ONLY

**{¶ 25}** The special hazard rule set forth in the *Littlefield* syllabus accurately states a causal relation between employment and injury that is sufficient to escape the coming-and-going rule. That syllabus, however, does not address the degree to which the employee's activity when injured must relate to his employment.[2] Because statutory law requires an injury to be suffered in the course of employment *and* to arise out of the employment, the syllabus statement does not state all that is required to avoid the coming-and-going rule.[3]

**{¶ 26}** Accordingly, we now expressly limit the syllabus of *Littlefield* to state a test for determining only whether a traffic injury suffered by a fixed-situs employee while coming to or going from work *arises out of* the employment relationship. If an employee's injury occurs in the course of his employment, yet fails the *Lord* three-part test for causation, a fixed-situs employee may,

---

2. The *Littlefield* court did, in fact, discuss the work-relatedness of the claimant's activity at the time of the accident in the body of its opinion. The court noted that the injury occurred during a regularly scheduled meal break, while the claimant was returning from a local restaurant. The *Littlefield* court additionally noted that the employer sometimes paid the restaurant directly for meals consumed by its employees during work hours. Additionally, a concurrence written by Justice Clifford F. Brown specifically distinguished the case from *Bralley, supra,* on the basis of time, place, and circumstance. The *MTD Products* court, however, did not deem these facts a sufficient basis to distinguish its case—involving an employee engaged in his initial commute to work—from *Littlefield*.

3. We acknowledge that a number of jurisdictions follow a "quantum theory" of work-connection, allowing the strength of either the "in the course of" or the "arising out of" element to make up for the weakness of the other element. 2 Larson at 5-476 to 5-478. The theory is, in part, based on the often overlapping nature of the two elements. In *Fisher, supra,* 49 Ohio St.3d at 277, 551 N.E.2d at 1274, this court noted that both elements merge into a test of work-connectedness, but did not waiver from its statement that both elements, nevertheless, must be satisfied before compensation will be allowed.

nevertheless, demonstrate the required causal connection between employment and injury under the special hazard rule of causation.

APPLICATION OF THE SPECIAL HAZARD RULE

{¶ 27} In this case, multiple factors work in combination to make travel to the temporary drilling sites a special hazard of employment. Two such factors are the temporary nature and constantly changing location of the riggers' fixed work sites. Cubby regularly dispatched its employees over a three-state area for work assignments typically lasting somewhere between three and ten days. Unlike the typical fixed-situs employee, the Cubby riggers did not know the location of future assignments, and it was impossible for them to fix their commute in relation to these remote work sites. Cubby's customers determined the drilling sites and Cubby dispatched its employees to these locations without regard to the distance the riggers would need to travel. While Cubby paid a bonus to its employees based on how far they worked away from the company's Midvale base, under normal circumstances that bonus was minimal and did not contemplate overnight expenses. Instead, Cubby expected its workers to commute back and forth to the job site on a daily basis or arrange and pay for their own overnight accommodations.

{¶ 28} A third factor pertinent here is the distance of the riggers' commutes to the remote work sites. As a condition of their employment, Cubby required the riggers to report to work sites separated by significant distances, both from each other and from the Midvale home base. Although the riggers worked within an area of a one-day drive, that area was not so limited as to bring the riggers' travel to the varying work sites in line with work commutes common to the public.

{¶ 29} For most employees, commuting distance to a fixed work site is largely a personal choice. Any increased risk due a longer commute is due more to the employee's choice of where he or she wants to live than the employer's choice of where it wants to locate its business. Accordingly, it usually is not the employment relationship that exposes an employee to the greater risk associated

with a long commute. Moreover, the risks associated with highway travel are not distinctive in nature from those faced by the public in general. Here, however, the employment relationship dictates that the riggers undertake interstate and lengthy intrastate commutes, thereby significantly increasing their exposure to traffic risks associated with highway travel. Accordingly, because of the combination of all these factors, the riggers have established a risk quantitatively greater than risks common to the public.

R.C. 4123.452

{¶ 30} Finally, Cubby asserts that the employees' ineligibility to participate in the Workers' Compensation Fund is expressly established by R.C. 4123.452, which states:

"As used in this section, 'ridesharing arrangement' means the transportation of persons in a motor vehicle where such transportation is incidental to another purpose of a volunteer driver and includes ridesharing arrangements known as carpools, vanpools and buspools.

"No compensation shall be allowed under this chapter for any employee injured while participating in a ridesharing arrangement between his place of residence and place of employment or termini near such places. An injury occurring while an employee is voluntarily participating in a ridesharing arrangement is not considered in the course of employment."

{¶ 31} Cubby would have us interpret this section as a rule of exclusion—that even if we normally would consider the travel resulting in an employee's injury to fall within the course of employment, the employee's participation in a voluntary ridesharing arrangement forecloses recovery of workers' compensation benefits. In interpreting statutes, however, we are to presume that a just and reasonable result is intended. R.C. 1.47; see, also, *State ex rel. Dispatch Printing Co. v. Wells* (1985), 18 Ohio St.3d 382, 384, 18 OBR 437, 439, 481 N.E.2d 632, 634 (noting the axiom of judicial interpretation that "statutes be construed to avoid unreasonable or absurd

consequences"). Additionally, R.C. 4123.95 provides that "[s]ections 4123.01 to 4123.94 * * * of the Ohio Revised Code shall be liberally construed in favor of employees and the dependents of deceased employees."

{¶ 32} Cubby discounts both of these statutory considerations. Under Cubby's interpretation, the statute would strip employees of their statutory right to participate in the Workers' Compensation Fund solely on the basis of their participation in ridesharing, an activity that the legislature has expressly directed the Directors of Transportation and Development to promote (R.C. 5501.031[F]) and has authorized the use of cars owned or leased by state agencies and political subdivisions to further (R.C. 1551.25[B]).

{¶ 33} Instead of a rule of exclusion, R.C. 4123.452 establishes that voluntary participation in a ridesharing arrangement is not an act that converts the personal nature of the typical work commute into an activity that is in the course of employment as contemplated in R.C. 4123.01(C). Accordingly, R.C. 4123.452 does not alter our disposition of this case.

## CONCLUSION

{¶ 34} We hold that a fixed-situs employee is entitled to workers' compensation benefits for injuries occurring while coming and going from or to his or her place of employment where the travel serves a function of the employer's business and creates a risk that is distinctive in nature from or quantitatively greater than risks common to the public. Accordingly, we affirm the appellate court judgments.

*Judgments affirmed.*

MOYER, C.J., F.E. SWEENEY and PFEIFER, JJ., concur.

LUNDBERG STRATTON, J., concurs in the syllabus and judgment.

DOUGLAS and RESNICK, JJ., concur in judgment only.

_____

**Alice Robie Resnick, J., concurring in judgment only.**

{¶ 35} While the majority arrives at the correct judgment, it does so based on a faulty analysis concerning whether claimants had a fixed place of employment for purposes of the "going and coming" rule, and whether claimants' injuries arose out of their employment. I write separately to clarify certain aspects of the "course" and "arising" elements as they apply to the fact patterns presented in these cases.

{¶ 36} Appellant, Cubby Drilling, Inc. ("Cubby"), is engaged in the business of drilling oil and gas wells. Most of its drilling is performed in Ohio and Pennsylvania, with occasional drilling sites in New York. Claimants-appellees, Kenneth Ruckman, Jr., John W. Riggs III, and Richard Brosius, were employed by Cubby to work in four-man crews on rigs as they moved from site to site.

{¶ 37} According to Riggs, the drill site would move approximately every fourth to eighth day. According to Ruckman and Brosius, they were assigned to drilling sites for periods of three to five days. According to Cubby, the average job site ranged from a few days to a few months.

{¶ 38} Regardless of the duration of particular drilling sites, the location of the sites was subject to constant change and was determined entirely by contract between Cubby and its customers. Claimants were informed as to which drill site to report in one of two ways. In the event they had worked the shift prior to a move of the rig, they would be assigned to the next job at that time. Otherwise, they would be called at home and told where and when to report.

{¶ 39} Once given their assignments, claimants were required to report directly to the drill site rather than to Cubby's home office in Midvale. Typically, the claimants would leave their homes prior to each shift, meet with other crew members at an agreed place, and ride to the site together in a single vehicle. Cubby neither provided nor offered transportation, but would pay a per diem based on the number of miles a drill site was from Cubby's home office.

{¶ 40} On December 17, 1991, Riggs and Brosius met two other crew members in Canton, Ohio, and headed to their job site in Champion, Ohio. At about

14

10:00 p.m., while en route from Canton to Champion on State Route 225 in Portage County, Riggs and Brosius were injured when a vehicle approaching from the other direction crossed the centerline and collided with the vehicle in which they were passengers.

{¶ 41} On January 20, 1993, Ruckman met two other members of his crew near Cadiz, Ohio, and headed for his job site in Mercer, Pennsylvania. At about 6:00 a.m., while en route from Cadiz to Mercer on State Route 225 in Portage County, Ruckman was injured when the vehicle in which he was a passenger was struck by a tractor-trailer rig.

{¶ 42} Each claimant filed a workers' compensation claim, which was allowed administratively. All three orders were appealed to the Portage County Court of Common Pleas. In each case, cross-motions for summary judgment were filed, and the trial court entered judgment in favor of the claimant. The court of appeals, in three separate opinions, affirmed the judgments of the trial court. Relying on *Fletcher v. Northwest Mechanical Contr., Inc.* (1991), 75 Ohio App.3d 466, 599 N.E.2d 822, the court of appeals declined to apply the "going and coming" rule to defeat compensation in these cases because "the nature of the employment itself requires travel as a necessary part of the job."

{¶ 43} Since all three claimants were injured under similar circumstances and were engaged in the same kind of work for the same employer, the common question confronting this court is whether the "going and coming" rule applies to defeat compensation to those employees who are assigned to work at constantly changing work sites.

COURSE OF EMPLOYMENT

{¶ 44} Under R.C. 4123.01(C), an injury, to be compensable, must be "received in the course of, and arising out of, the injured employee's employment." The course-of-employment requirement tests work-connection as to time, place, and circumstance. *Fisher v. Mayfield* (1990), 49 Ohio St.3d 275, 277, 551 N.E.2d

1271, 1274. It connotes the performance of some required duty in the service of the employer. *Indus. Comm. v. Gintert* (1934), 128 Ohio St. 129, 133-134, 190 N.E. 400, 403.

{¶ 45} Even though the employment is the cause of the worker's journey between home and workplace, it has never been accepted that workers' compensation was intended to protect against all risks and hazards of that journey. *Indus. Comm. v. Baker* (1933), 127 Ohio St. 345, 188 N.E. 560, paragraph four of the syllabus. See, also, Fulton, Ohio Workers' Compensation Law (1991) 149, Section 7.7; 1 Larson's Workers' Compensation Law (1997) 4-3, Section 15.11. Accordingly, the rule has evolved that an employee injured while traveling to and from a fixed and limited place of employment generally does not receive an injury in the course of employment. *Bralley v. Daugherty* (1980), 61 Ohio St.2d 302, 303, 15 O.O.3d 359, 360, 401 N.E.2d 448, 450. Thus, absent certain exceptions relative to the range of employment dangers, an employee who is going to and from a fixed place of employment is covered only on the employer's premises. *Indus. Comm. v. Bateman* (1933), 126 Ohio St. 279, 185 N.E. 50, paragraph two of the syllabus.

{¶ 46} This rule, known as the "going and coming" or "premises" rule, represents "a compromise on the subject of going to and from work." 1 Larson, *supra*, at 4-3, Section 15.11. See, also, Fulton, Ohio Workers' Compensation Law (1991) 149, Section 7.7. It neither always allows nor always precludes compensation to all employees who are injured in the course of their travel to and from work. By definition, it applies only to the employee having a "fixed" place of employment.

{¶ 47} As relevant here, "fixed" means "not subject to change or fluctuation." Webster's Third New International Dictionary (1986) 861. Thus, "[a]n employee who has a fixed situs of employment reports to the same place each day to carry out his duties." Young's Workmen's Compensation Law of Ohio (2 Ed.1971) 81, Section 5.7. Accordingly, in *Indus. Comm. v. Heil* (1931), 123 Ohio

16

St. 604, 176 N.E. 458, the court held the going-and-coming rule applicable to a plant superintendent who "had no duties to perform for the company *at any place other* than at the abattoir plant." (Emphasis added.) *Id.*, 123 Ohio St. at 604, 176 N.E. at 459.

{¶ 48} In *Indus. Comm. v. Gintert* (1934), 128 Ohio St. 129, 190 N.E. 400, the court held the going-and-coming rule applicable to a school teacher whose sole place of employment was a particular school building. The claimant argued that the decedent was in the course of her employment while traveling between work and home because she did some preparatory work at home. In rejecting this argument, the court reasoned:

"If there can be a recovery under the facts in this record, then there could be a like recovery in the case of any clerk, stenographer, bookkeeper, or any other employe[e] employed in an office, bank, store, factory, or other place of employment, who carried home any books, papers, statements, etc., for any purpose at all connected with his duties * * *." *Id.*, 128 Ohio St. at 133, 190 N.E. at 402-403.

{¶ 49} In *Outland v. Indus. Comm.* (1940), 136 Ohio St. 488, 493, 17 O.O. 92, 94, 26 N.E.2d 760, 762, the court explained that "[d]ecedent [an automobile salesman] was not a pieceworker plying his trade in a particular place."

{¶ 50} In *Lohnes v. Young* (1963), 175 Ohio St. 291, 25 O.O.2d 136, 194 N.E.2d 428, the court found that the decedent, who was employed as a products control manager by General Mills, Inc., at its Toledo plant, was a fixed-situs employee. In so doing, the court carefully pointed out that decedent's "work was performed in and his duty to his employer extended over *only this one plant*. The only traveling decedent did was to and from work, from his home to the plant. His job, as such, required *no other traveling*, and he was thus subjected to no greater hazards than any other member of the public." (Emphasis added.) *Id.*, 175 Ohio St. at 293, 25 O.O.2d at 137, 194 N.E.2d at 430. Thus, the court concluded, "no

matter what hours decedent worked, his work was performed *in a fixed and limited place, General Mills' plant, and it was only there that he was required to perform his duties on behalf of his employer.*" (Emphasis added.) *Id.*, 175 Ohio St. at 294, 25 O.O.2d at 137, 194 N.E.2d at 430-431.

{¶ 51} Thus, a factory worker, plant superintendent, school teacher and products control manager, as well as a clerk, stenographer, bookkeeper or any other employee employed at a particular plant, office, school, bank, store, factory or other unchanging place of employment, are examples of persons who have fixed places of employment. They report to the same work situs each day, and that situs is not subject to change.

{¶ 52} On the other hand, many courts, including at least six Ohio district courts of appeals, have refused to bar compensation on the basis of the going-and-coming rule to those employees who are required to work at various or constantly changing work sites. Collectively, these courts have allowed compensation for injuries sustained during travel in the case of a road construction worker who was assigned to various job sites for periods of up to one year; a field erection supervisor whose duties consisted of supervising the installation of industrial machines in the factories of purchasers where he would remain for five- to six-month periods; home health aides and nurses who are assigned to constantly varying work sites; a "working foreman" who installed and supervised the installation of sprinkler systems, which required that he work at varying sites for various periods of time; a security guard employed to fill various shifts and assignments which became open due to sickness or emergencies at various work sites; a laborer for a company which was in the business of leveling, securing, and skirting trailers at various sites; and a "driller's assistant," a "pumper," a "tool pusher," and a "roughneck," each of whom worked at various oil and gas well sites. *Hampton v. Trimble* (1995), 101 Ohio App.3d 282, 655 N.E.2d 432; *Fletcher, supra; Durbin v. Ohio Bur. of Workers' Comp.* (1996), 112 Ohio App.3d 62, 677 N.E.2d 1234; *Ruckman v. Cubby*

18

*Drilling, Inc.* (June 14, 1996), Portage App. No. 95-P-0115, unreported, 1996 WL 649091; *Burchett v. S.E. Johnson Cos., Inc.* (Jan. 13, 1995), Ottawa App. No. 94-OT-014, unreported, 1995 WL 12132; *Lemponen v. R. & R. Internatl.* (Oct. 5, 1994), Summit App. No. 16400, unreported, 1994 WL 543139; *Skula v. Nationwide Ins. Co.* (May 5, 1994), Cuyahoga App. No. 65486, unreported, 1994 WL 173480; *Maglis v. Ohio Bur. of Workers' Comp.* (Feb. 5, 1993), Sandusky App. No. S-92-16, unreported, 1993 WL 24476; *United States Fire Ins. Co. v. Brown* (Tex.App.1983), 654 S.W.2d 566; *Currie v. Self Help Community Services, Inc.* (1978), 65 A.D.2d 852, 410 N.Y.S.2d 374; *Wright v. Indus. Comm.* (1975), 62 Ill.2d 65, 338 N.E.2d 379; *Newman v. Bennett* (1973), 212 Kan. 562, 512 P.2d 497; *Gautreaux v. Life Ins. Co. of Georgia* (La.App.1972), 256 So.2d 832; *Devlin v. Edward Petry & Co.* (1965), 24 A.D.2d 804, 263 N.Y.S.2d 662; *Mitchell v. Mitchell Drilling Co.* (1941), 154 Kan. 117, 114 P.2d 841.

{¶ 53} The claimants in the present cause were not fixed-situs employees. They were not pieceworkers plying their trade in a particular place. They did not report to the same place of employment each day to carry out their duties. Their work took them on roads and highways to ever-changing work sites across Ohio, Pennsylvania, and New York, where they worked for various periods of time as the rig moved from site to site, depending upon the location and needs of Cubby's various customers and where Cubby directed them to report. Without the willingness of employees like Ruckman, Riggs, and Brosius to expose themselves to the hazards of long distances of highway travel to constantly varying work sites, Cubby could not have done business under its system. I simply cannot accept that the term "fixed," as used in the going-and-coming rule, was intended to stretch so far as to encompass this type of employment arrangement. To do so would be a strict rather than a liberal interpretation of the course-of-employment requirement, and directly contravene the mandate of R.C. 4123.95.

**{¶ 54}** The majority finds that despite claimants' classification as fixed-situs employees, and the application of the going-and-coming rule, their injuries were nevertheless sustained in the course of employment. The majority explains:

"The nature of the rigging business requires that drilling be done on a customer's premises. That is a necessary condition of the work contract. The riggers set up on a customer's premises, drill a well and, after completion, disassemble the derrick for transport to the next job site. Consequently, while coming to and going from a customer's premises, these employees are engaged in the promotion and furtherance of their employer's business as a condition of their employment. Accordingly, their travel is in the course of their employment."

**{¶ 55}** This analysis recognizes, in essence if not by name, the principle that "[t]he rule excluding off-premises injuries during the journey to and from work does not apply if the making of that journey * * * is in itself a substantial part of the service for which the worker is employed." 1 Larson's Workers' Compensation Law, *supra*, at 4-193, Section 16.00. To the extent that the majority finds that the fixed-situs claimant may rely on the journey-as-part-of-service principle to "avoid [the] force" of the going-and-coming rule, I have no quarrel with its analysis.

**{¶ 56}** However, once this principle is recognized, it can be considered the justification for holding, in the first instance, that variable-situs employees generally have no fixed place of employment. Many of the cases set forth above have considered the constantly changing nature of a claimant's employment situs to be the decisive factor in determining that a particular injurious journey to or from a work site was a necessary, substantial, or integral part of the claimant's employment.

ARISING OUT OF EMPLOYMENT

**{¶ 57}** The majority's entire "arising out of" analysis is misdirected. Under the majority's analysis, the claimants are required to rely on the "special hazard" exception, as an "alternate method[] of proving causality" because "[a]pplication

of the *Lord* [*v. Daugherty* (1981), 66 Ohio St.2d 441, 20 O.O.3d 376, 423 N.E.2d 96] factors to the present facts does not support compensation."

{¶ 58} In these cases, it is not necessary that claimants satisfy the *Lord* test or the special-hazard rule in order to establish that their injuries arose out of their employment. "If an employee is in the service of his employer at the time an accident occurs by reason of risk or hazard inherent in the use of a public road, it follows that the resultant injury or death arose out of the employment." *Newman, supra*, 212 Kan. at 569, 512 P.2d at 503. In other words, "when the employer's business is such that traveling was an integral part of the contract between the employee and the employer, the risk of accident during travel was a risk interrelated with the nature of that employment." *Fletcher, supra*, 75 Ohio App.3d at 474, 599 N.E.2d at 827.

{¶ 59} Thus, as the Supreme Court of Kansas aptly explained in *Mitchell, supra*, 154 Kan. at 122, 114 P.2d at 844:

"The accident also arose out of his employment. A necessary part of his employment consisted in traveling from well to well and to any other place at which he might desire to transact business pertaining to drilling activities. Manifestly, part of his business consisted of traveling the highways. The hazards and risks of highway travel were incidents of his employment. It was in connection with those hazards of employment that his death occurred and it cannot be said the accident did not arise out of his employment."

{¶ 60} In the present cause, claimants' travel to and from their assigned site was, as the majority states, "a condition of their employment." The risk of accident during such travel, therefore, was a hazard of their employment. Since claimants' injuries were caused by a hazard of their employment, it necessarily follows that their injuries arose out of their employment. It is at this point that the "arising out of" inquiry ends, not begins. The fact patterns presented in these cases do not warrant any further consideration under *Lord, supra*, or the special-hazard

exception. Those tests would come into play only if there was some evidence to the effect that claimants were traveling off-route to their assigned sites, or that their injuries were caused by some risk other than that inherent in the travel itself. That is not the case here.

{¶ 61} Accordingly, I would hold that an employee who is required to report to various or constantly changing work sites is not generally subject to the going-and-coming rule. When an employee is injured during travel to and from a variable work situs, his or her injury is generally received in the course of, and arising out of, his or her employment.

RIDESHARING

{¶ 62} I agree with the majority that "R.C. 4123.452 establishes that voluntary participation in a ridesharing arrangement is not an act that converts the personal nature of the typical work commute into an activity that is in the course of employment as contemplated in R.C. 4123.01(C)."

{¶ 63} I wish to stress, however, that R.C. 4123.452 is a ridesharing statute, nothing more. While this statute obviously contemplates the going-and-coming rule, it does not purport to codify, supersede, modify, or impose any additional requirements on the going-and-coming rule. It applies when compensation is sought on the basis that claimant's injuries occurred while he or she was participating in a ridesharing arrangement. It adopts the concept that the ridesharing arrangement *itself* is not sufficient to bring an injury within the course of employment. It does not operate to preclude compensation for injuries which occur during a ridesharing arrangement where there is an independent basis for compensation. Since claimants in this cause do not base their claims on the fact that they were carpooling when their injuries occurred, R.C. 4123.452 does not apply. However, it remains a judicial function to determine the nature, extent, and applicability of the going-and-coming rule.

**{¶ 64}** In light of all the foregoing, and for the reasons set forth herein, I concur in the majority's judgment that the injuries suffered by each claimant were received in the course of, and arising out of, his employment with Cubby and, therefore, are compensable.

Douglas, J., concurs in the foregoing concurring opinion.

_____