OPINION
Plaintiff-appellant Zona Slack appeals from the October 28, 1999, Judgment Entry of the Ashland County Court of Common Pleas granting the Joint Motion for Summary Judgment filed by defendants-appellees Karrington Operating Company, Inc., the Bureau of Workers' Compensation and the Industrial Commission of Ohio while denying the Motion for Summary Judgment filed by plaintiff-appellant.
 STATEMENT OF THE FACTS AND CASE
At all relevant times, appellant Zona Slack was employed by appellee Karrington Operating Company as an administrative assistant and secretary to Anthony DiBlasi, the Vice President of Construction Services. As part of her duties, appellant, who had been personally hired by DiBlasi, organized meetings and communications for DiBlasi and assisted him in developing a construction services procedure manual. On occasion, appellant accompanied DiBlasi to project sites so that she could "understand the nuts and bolts, so to speak, of the project" and "communicate with other people concerning projects." Anthony DiBlasi Deposition at 15-16. On October 1, 1997, appellant accompanied DiBlasi on a trip from their home office in Columbus, Ohio, to a project site in Wooster, Ohio. The two left Columbus at approximately 11:00 a.m. in DiBlasi's vehicle and traveled north up I-71 to Route 30 and took Route 30 east into Wooster. After stopping for lunch in Wooster, appellant and DiBlasi traveled to the project site and met with the project superintendent. During their trip, the two were working on the construction services procedure manual for appellee Karrington Operating Company. After leaving the project site in Wooster, DiBlasi and appellant headed back towards Columbus with DiBlasi driving and appellant in the passenger's seat. Instead of traveling via Route 30, DiBlasi decided to take Route 3 back to Columbus. Upon arriving in Loudonville, the two stopped briefly for gasoline and for a soft drink before continuing south on Route 3. Shortly after leaving Loudonville, appellant and DiBlasi neared Mohican State Park, which is adjacent to Route 3. As they neared the park, appellant "commented how very — — how it reminded her of the area she had grown up in, as far as the hills, terrain, and the like, . . ." Anthony DiBlasi Deposition at 26. After passing a sign that indicated an observation deck, appellant and DiBlasi decided to stop in the park to take a break for five to ten minutes to drink their soft drinks and to take a look at the gorge. The two then exited Route 3 onto Route 97 and traveled a couple of miles to the outlook area in the park. Upon arriving at a parking lot adjacent to the gorge outlook, appellant placed the manual they had been working on down and exited the car with DiBlasi. The two then proceeded to the observation area overlooking the gorge with their Cokes. The observation area, which has three levels, overlooks a river valley. A stone stairway leads down from the top level of the observation area to the second level. After spending several moments on the top level observing the scenery, appellant and DiBlasi went down the stone stairs to the second level. Below the second level there is a stone walkway. However, the second level contains a low stone seat wall with no opening or gate granting access to the walkway below. The stone wall is approximately two and a half to three feet in height. While DiBlasi was standing on the second level observation deck overlooking the gorge, appellant "walked to the left side of the second level and saw that there were additional steps beyond the seat wall that go down to the third and lowest level, which was again another five feet . . . lower than the level we were standing on." Anthony DiBlasi Deposition at 32. DiBlasi then saw appellant sit on the stone seat wall, swing her legs over the wall and step onto the landing of the steps below. According to DiBlasi, appellant did not discuss her decision to go down to the third level with him. As appellant stepped onto the landing, she lost her balance and fell backwards off of the stone landing, falling into the gorge below. DiBlasi testified that the gorge was not visible from where appellant stepped over the wall since "[y]ou're viewing past the immediate face of trees, actually looking over tree limbs, and you don't — you can't see straight down." Anthony DiBlasi Deposition at 34. As a result of her fall, which occurred at approximately 4:00 P.M., appellant sustained serious physical injuries and was unable to recall the events that occurred after she exited DiBlasi's car at the park. Appellant subsequently filed a claim for workers' compensation benefits with appellee the Bureau of Workers' Compensation. Such claim was denied by an Industrial Commission District Hearing Officer pursuant to an order dated December 30, 1997. Upon appeal, an Industrial Commission Hearing Officer affirmed the District Hearing Officer's December 30, 1997, decision. Appellant's further appeal to appellee, the Industrial Commission of Ohio, was refused via an order dated April 22, 1998. On June 2, 1998, appellant filed a Notice of Appeal and a Complaint in the Ashland County Court of Common Pleas. While appellee Karrington Operating Company, Inc. filed an answer to appellant's complaint ten days later, appellees the Bureau of Workers Compensation and the Industrial Commission of Ohio filed a joint answer on June 30, 1998. A Joint Motion for Summary Judgment was filed by appellees on August 30, 1999. In response, appellant, on October 1, 1999, filed a Motion for Summary Judgment to which appellees filed a response one week later. Pursuant to a Judgment Entry filed on October 28, 1999, the trial court granted appellees' Joint Motion for Summary Judgment while overruling that filed by appellant. The trial court, in its entry, specifically held, in part, as follows: This Court is finding that the Plaintiff [appellant] ceased being in the course and scope of her employment, and began a personal venture, at some point between exiting the car at the Overlook, on the one hand, and climbing over the two and one-half to three foot protective wall on the third and lowest level of the Overlook. Therefore, the unfortunate injuries she sustained in her subsequent fall were neither "in the course of" nor "arising out of", her employment.
It is from the trial court's October 28, 1999, Judgment Entry that appellant prosecutes her appeal, raising the following assignment of error:
 UPON CONSIDERATION OF DEFENDANTS-APPELLEES' JOINT MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF-APPELLANT'S CROSS MOTION FOR SUMMARY JUDGMENT, THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND ERRONEOUSLY OVERRULED PLAINTIFF-APPELLANT'S MOTION AND SUSTAINED DEFENDANTS-APPELLEES' MOTION, THEREBY DENYING PLAINTIFF-APPELLANT THE RIGHT TO PARTICIPATE IN WORKERS' COMPENSATION BENEFITS.
 STANDARD OF REVIEW
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,36. Civ.R. 56(C) states in pertinent part: Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, citing Dresher v. Burt (1966), 75 Ohio St.3d 280. It is based upon this standard we review appellant's assignment of error. I Appellant, in her sole assignment of error, contends that the trial court erred in granting appellees' Joint Motion for Summary Judgment while overruling that filed by appellant. Appellant specifically argues that she was entitled to workers' compensation benefits since her October 1, 1997, injury occurred in the course of and arising out of her employment with appellee Karrington Operating Company, Inc. We disagree. R.C. 4123.01(C) provides that in order for an employee's injury to be compensable under the workers' compensation fund, the injury must be "received in the course of, and arising out of, the injured employee's employment." Both prongs of the above test must be met before compensation will be granted. Fisher v. Mayfield (1990), 49 Ohio St.3d 275, 277. Thus, the first issue for determination is whether appellant's October 1, 1997, injury was received in the course of her employment with appellee Karrington Operating Company, Inc. The Ohio Supreme Court recently held as follows in defining the phrase "in the course of employment": The phrase "in the course of employment" limits compensable injuries to those sustained by an employee while performing a required duty in the employer's service. * * * "To be entitled to workmen's compensation, a workman need not necessarily be injured in the actual performance of work for his employer." * * * An injury is compensable if it is sustained by an employee while that employee engages in activity that is consistent with the contract for hire and logically related to the employer's business.
Ruckman v. Cubby Drilling, Inc. (1998), 81 Ohio St.3d 117,120. (Citations omitted). In order to determine whether an injury occurs in the course of employment, courts consider the time, place and circumstances of the injury. Id., citing Fisher v. Mayfield (1990),49 Ohio St.3d 275, 277. If an employee's injuries are sustained off premises, "the employee,. . . . must, at the time of his injury, have been engaged in the promotion of his employer's business and in the furtherance of his affairs." Id. at 121, quoting Indus. Comm. v. Bateman (1933), 126 Ohio St. 279. While appellant maintains that she was in the course of her employment with appellee Karrington Operating Company at the time of her injury, we do not concur. There is no dispute that appellant, who was injured during business hours, was not injured on appellee Karrington Operating Company's property. Rather, appellant was injured while visiting a state park on a break with her boss. As is stated above, appellant left appellee Karrington Operating Company's main office in Columbus with Anthony DiBlasi, her boss, at approximately 11:00 a.m. After visiting the project site in Wooster, the two proceeded back to Columbus via a different route. As the two neared Mohican State Park, appellant commented on how the scenery reminded her of West Virginia, the area in which she had grown up. For such reason, the two decided to take a break in the park to drink the Cokes that they had purchased earlier and to view the gorge. While, up until this point in time, appellant and DiBlasi had been working on an operations manual while traveling to and from Wooster, upon arriving in the park, appellant left the manual in the car. The two then proceeded to the park's observation deck. Appellant argues that "[s]tepping out of his [DiBlasi's] car and walking to the observation deck with him was no less a part of her job duties that day than any of the other tasks she had performed". Appellant further contends that her participation in a break with her boss both logically pertains to her duties and was incidental to her work. While appellant's travelling to the park and taking a break may fall within the course of her employment, we concur with the trial court that once appellant, of her own volition, sat on the stone wall of the second level of the observation deck and swung her legs over the wall to reach the walkway below, she ceased being in the course of her employment. At such point in time, appellant was not in the actual performance of her duties and was no longer on a break with her boss. While appellant, due to her injuries, has no recollection of the incident once she exited the car at the park, DiBlasi testified that he never suggested to appellant that she go down to the lower level of the observation deck, which was closed to the public. Anthony DiBlasi Deposition at 82. Moreover, we fail to see how appellant, in doing so, was engaged in the promotion of appellant Karrington Operating Company's business or in the furtherance of its affairs. Reasonable minds might conclude that appellant was still in the course of her employment when she took a break in Mohican State Park with her boss. However reasonable minds could only conclude that when appellant, during such break, left the second level of the observation deck, sat on the stone wall, and swung her legs over the same to reach the walkway below, appellant "was on a purely personal mission of her own, having nothing to do with her employer's purposes, and was therefore outside the course of her employment." Marbury v. Indus. Comm. (1989),62 Ohio App.3d 786, 790. Such action clearly was not authorized by appellee Karrington Operating Company. Even assuming arguendo, that appellant's injury occurred in the course of her employment with appellee Karrington Operating Company, appellant still is not entitled to workers' compensation benefits since her injury did not arise out of her employment. "The `arising out of element' . . . contemplates a causal connection between the injury and the employment." Fisher, supra., at 277-278. Ohio courts utilize a "totality of the facts and circumstances" analysis to determine whether there is a sufficient causal connection between the injury and the employment. Such test requires that the following facts and circumstances be analyzed: "(1) the proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident." Ruckman, supra. at 122, quoting Lord v. Daugherty (1981), 66 Ohio St.2d 441, syllabus. Application of the above three factors to the facts in the case sub judice does not support an award of workers' compensation benefits to appellant. With respect to the proximity factor, the accident in the case sub judice occurred in a state park that was not in close proximity to appellant's workplace in Columbus or to the project site in Wooster. Since the accident occurred in a state park, appellee Kassinger Operating Company had absolutely no control over the scene of the accident. Finally, with respect to the third factor, it could be argued that appellee Kassinger Operating Company received a benefit from appellant's presence at the park for the purpose of taking a break before driving back to Columbus in the form of a refreshed employee. However, appellee Kassinger Operating Company received absolutely no benefit from appellant's presence at the gorge overlook, the scene of the accident. The record is clear that, at the time of the accident, appellant was not working on the operations manual or otherwise carrying on her employee's business. Moreover, as appellee Karrington Operating Company notes in its brief, "any benefit the company may receive from having a refreshed employee could have been achieved by stopping at a standard rest area" rather than stopping at a park observation area off of the main road. Clearly, all three of the Lord factors are not met in the case sub judice. Even if the factors set forth in Lord are not satisfied, additional facts and circumstances may result in a finding of causation. See Ruckman, supra. at 122. "When applying the Lord test, the enumerated factors are not intended to be exhaustive and the totality-of-the-circumstances test may continue to evolve." Ruckman, supra, at 122, citing Fisher, supra, at 279. However, there are no additional facts or circumstances in the case sub judice supporting a finding of causation. Accordingly, we find that there is no genuine issue of material fact as to whether appellant's injury arose out of her employment. Since, based on the foregoing, reasonable minds could only conclude that appellant's injury did not occur in the course of and arising out of her employment with appellee Karrington Operating Company, Inc., the trial court did not err in granting appellees' Joint Motion for Summary Judgment while overruling that filed by appellant.
Accordingly, appellant's sole assignment of error is overruled. The judgment of the Ashland County Court of Common Pleas is affirmed.