DIANE V. GRENDELL, J.
{¶ 1} Appellant, Brandon Green, appeals the decision of the Portage County Court of Common Pleas, granting summary judgment in favor of appellee, Marc Glassman, Inc. The issue before this court is whether a workers' compensation claimant who was injured while driving home after working a third shift installing cash registers at a retail store is barred from receiving benefits by the "coming and going rule." For *517 the following reasons, we affirm the decision of the court below.
{¶ 2} On June 3, 2016, Marc Glassman, Inc. filed a Notice of Appeal from the March 7, 2016 Order and Decision of the Industrial Commission of Ohio allowing its employee, Brandon Green's, claim for benefits. According to the Commission's findings: "The Injured Worker was driving home after working a third shift at 3:05 AM, [on June 9, 2015,] fell asleep at the wheel, and hit a large ditch going 55 miles per hour." The claim was allowed for laceration of the left foot and open fracture of the left calcaneus.
{¶ 3} On September 12, 2016, Green filed a Petition and Complaint on Appeal against Marc Glassman and the Administrator, Bureau of Workers' Compensation, praying that "he be allowed to participate in the State Insurance Fund."
{¶ 4} On October 13, 2016, the Administrator filed her Answer to the Complaint, praying that Green "be found entitled to continue to participate, under the workers' compensation laws of Ohio."
{¶ 5} On November 7, 2016, Marc Glassman filed an Answer, demanding the dismissal of Green's Complaint.
{¶ 6} On April 5, 2017, Marc Glassman filed a Motion for Summary Judgment.
{¶ 7} On May 2, 2017, Green filed a Brief in Opposition. Attached to the Brief was Green's Affidavit attesting to the following:
3. I have been employed by Marc Glassman, Inc. * * * since February 26, 2014.
4. On or about October 14, 2014, I transferred to the Marc's store on West State Street in Alliance, Ohio * * *.
5. My duties at the Alliance Ohio store included working second and third shift as a stocker.
6. While employed at the Alliance Ohio store I was approached by my store manager with an order from Marc's corporate office to help install new cash registers at different Marc's stores.
7. From April of 2015 to June of 2015, I helped install new cash registers at different Marc's stores for approximately seven work shifts.
8. On all days in which I was not installing new cash registers, I continued to work second and third shift at the Alliance Ohio store as a stocker for the remainder of my work week.
10. On days where [sic] I was installing new cash registers, I would typically work third shift.
11. On days where [sic] I was installing new cash registers at Marc's stores other than the Alliance Ohio store, Marc's would reimburse me for any and all mileage from driving to and from the different stores.
12. On the night of June 8, 2015 and early morning of June 9, 2015, I worked at the Marc's store on Andrews Road in Mentor-on-the-Lake.
{¶ 8} On May 10, 2017, Marc Glassman filed a Brief in Support of Motion for Summary Judgment.
{¶ 9} On June 23, 2017, the trial court granted Marc Glassman's Motion for Summary Judgment.
{¶ 10} On July 20, 2017, Green filed a Notice of Appeal. On appeal, Green raises the following assignment of error:
{¶ 11} "[1.] The Trial Court erred in granting Appellee Marc Glassman, Inc.'s Motion for Summary Judgment."
{¶ 12} Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it *518 appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. Grafton v. Ohio Edison Co. , 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "Under this standard, the reviewing court conducts an independent review of the evidence before the trial court and renders a decision de novo, i.e., as a matter of law and without deference to the conclusions of the lower court." (Citation omitted.) Knoefel v. Connick , 11th Dist. Lake No. 2016-L-131, 2017-Ohio-5642, ¶ 15, 2017 WL 2831022.
{¶ 13} Under Ohio's workers' compensation law, "every employee, who is injured or who contracts an occupational disease, * * * is entitled to receive the compensation for loss sustained on account of the injury * * *." R.C. 4123.54(A). Injury, for the purposes of being entitled to receive compensation, "includes any injury * * * received in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C).
{¶ 14} "The coming-and-going rule is a tool used to determine whether an injury suffered by an employee in a traffic accident occurs 'in the course of' and 'arise[s] out of' the employment relationship so as to constitute a compensable injury under R.C. 4123.01(C)." Ruckman v. Cubby Drilling, Inc. , 81 Ohio St.3d 117, 119, 689 N.E.2d 917 (1998) ; MTD Prods., Inc. v. Robatin , 61 Ohio St.3d 66, 572 N.E.2d 661 (1991), syllabus. ("[a]s a general rule, an employee with a fixed place of employment, who is injured while traveling to or from his place of employment, is not entitled to participate in the Workers' Compensation Fund because the requisite causal connection between the injury and the employment does not exist").
1. In determining whether an employee is a fixed-situs employee and therefore within the coming-and-going rule, the focus is on whether the employee commences his or her substantial employment duties only after arriving at a specific and identifiable work place designated by his employer. That focus remains the same even though the employee may be reassigned to a different work place monthly, weekly, or even daily. Despite periodic relocation of job sites, each particular job site may constitute a fixed place of employment.
2. A fixed-situs employee is entitled to workers' compensation benefits for injuries occurring while coming and going from or to his place of employment where the travel serves a function of the employer's business and creates a risk that is distinctive in nature from or quantitatively greater than risks common to the public. ( Littlefield v. Pillsbury Co. [1983], 6 Ohio St.3d 389, 6 OBR 439, 453 N.E.2d 570, paragraphs one and two of the syllabus, limited and modified.)
Ruckman at paragraphs one and two of the syllabus.
{¶ 15} Green contends that a genuine issue of material fact exists as to whether he was a fixed-situs employee because he "was required to travel to various stores of Defendant-Employer in a three county area," "work a third shift," and was "compensated * * * for his mileage incurred in the course of his employment." Appellant's brief at 7. We disagree.
{¶ 16} Green's employment with Marc Glassman demonstrated the determinative characteristics of a fixed-situs employee: he did not commence his employment *519 duties (installing cash registers) until he arrived at a specific and identifiable work place (a store) designated by Marc Glassman, albeit one that varied periodically. This has been the consistent conclusion reached by this and other courts as a matter of law in factually similar cases: Ruckman at 120, 689 N.E.2d 917 (oil riggers were fixed-situs employees where the "evidence demonstrates that the riggers here had no duties to perform away from the drilling sites to which they were assigned"; "[t]he riggers' workday began and ended at the drilling sites"; and, "although work at each drilling site had limited duration, it was a fixed work site within the meaning of the coming-and-going rule"); Palette v. Fowler Elec. Co. , 11th Dist. Geauga No. 2014-G-3196, 2014-Ohio-5376, ¶ 26, 2014 WL 6871151 (a field service technician was a fixed-situs employee where "he generally commenced his duties servicing heating and cooling units when arriving on the site of his job on that day" which "over a three-month period took place in a four-county radius"); Barber v. Buckeye Masonry & Constr. Co. , 146 Ohio App.3d 262, 265, 765 N.E.2d 951 (11th Dist.2001) (laborer was a fixed-situs employee where his "employment required him to travel daily to assigned construction sites, using his own personal vehicle, within the Ohio counties of Ashtabula, Geauga, and Lake" and "the work that [he] performed occurred solely at the assigned construction site"); Cunningham v. Bone Dry Waterproofing, Inc. , 2016-Ohio-3341, 66 N.E.3d 187, ¶ 15 (10th Dist.) (cases cited).
{¶ 17} Alternatively, Green contends that a genuine issue of material fact exists as to whether his "additional job responsibilities satisfy the special hazard exception to the coming and going rule." Appellant's brief at 7. Green maintains that he "was required to travel long distances at very early morning hours."[1] For support, Green cites to the Ruckman decision where the Ohio Supreme Court found that the special hazard exception applied to oil riggers whose "employment relationship dictates that the riggers undertake interstate and lengthy intrastate commutes, thereby significantly increasing their exposure to traffic risks associated with highway travel." Ruckman at 125, 689 N.E.2d 917. Again, we disagree.
{¶ 18} Even construing the evidence most strongly in Green's favor, the risks created by the additional responsibility for installing cash registers were not distinctive in nature from or quantitatively greater than risks common to the public. In the present case, Green worked approximately seven work shifts installing cash registers over a two- to three-month period, a relatively infrequent occurrence. While these shifts were typically third shifts, Green's position as a stocker required him to work second and third shifts on days he was not installing cash registers. A ninety-minute commute may be longer than a typical commute, but does not create or constitute a risk that is particularly distinctive.[2]
*520 Palette at ¶ 39 ; Mackell v. Armco, Inc. , 5th Dist. Coshocton No. 01CA017, 2002-Ohio-3487, ¶ 55, 2002 WL 1467775 (special hazard rule did not apply to employee who fell asleep while driving after a night shift).
{¶ 19} The circumstances of Green's commute are not comparable to those of the claimants in Ruckman , who were "dispatched * * * over a three-state area for work assignments typically lasting somewhere between three and ten days" and "did not know the location of future assignments" so that "it was impossible for them to fix their commute in relation to these remote work sites." Id. at 124, 689 N.E.2d 917. Absent such extreme circumstances, "the risks associated with highway travel are not distinctive in nature from those faced by the public in general." Id. at 125, 689 N.E.2d 917.
{¶ 20} The sole assignment of error is without merit.
{¶ 21} For the foregoing reasons, the decision of the Portage County Court of Common Pleas, granting summary judgment in favor of Marc Glassman, is affirmed. Costs to be taxed against the appellant.
THOMAS R. WRIGHT, J.,
COLLEEN MARY O'TOOLE, J.,
concur.

Green makes certain assertions in his appellate brief contrary to statements made in his Affidavit. For example, Green states in his affidavit that as a stocker he worked "second and third shift" and would "typically work third shift" when installing cash registers. In his brief, he claims that he "typically worked second shift" as a stocker and, "conversely, * * * worked third shift" when installing cash registers. Despite what is suggested in the brief, Green's Affidavit does not reasonably support the inference that the additional responsibility of installing cash registers represented a decided change from his status as a second-shift employee to a third-shift employee.

Both parties describe Green's commute to the Mentor-on-the-Lake Marc's as approximately ninety minutes although that fact is not established by evidence in the record.