OPINION
{¶ 1} The central issue in this appeal concerns the Workers' Compensation Act's *Page 2 
coverage formula. Is an injury suffered on an employer's premises "received in the course of, and arising out of" employment when the employee is voluntarily on the premises solely to pick up a paycheck, an activity that the employer's pay policy expressly permits but does not require? The trial court said it is, and it granted Tamara Hirschle's (Appellee) partial summary judgment motion. Both the Montgomery County Stillwater Health Center and the Ohio Bureau of Workers' Compensation (Appellants) disagree. They argue that she was on a purely personal errand. We will affirm.
 {¶ 2} The facts are not in dispute. Ms. Hirschle is employed by Stillwater, an agency owned and operated by Montgomery County, Ohio. Stillwater has a formal policy that allows each of its employees to choose the method by which she would like to receive her pay. The method selected also determines when an employee actually receives her pay. Friday is payday, and employees can choose to have their pay directly deposited into a financial account on that day. For employees who do not choose this method, on Friday Stillwater puts their paychecks in the mail, which they then generally receive the following Monday. But Stillwater also offers a third option that allows an employee to pick up her paycheck at its offices on Thursday afternoon, the day before payday. This was Ms. Hirschle's customary practice because she preferred to obtain her pay early. Because she did not work on Thursdays, she drove to Stillwater each Thursday before payday solely to pick up her check.
 {¶ 3} On Thursday December 1, 2005, she followed her usual custom. She drove to Stillwater and parked in the employee parking lot, which is owned, maintained, and controlled by the county. While walking back to her car after picking up her check, Ms. Hirschle slipped and fell near her car in the parking lot and broke her hip. *Page 3 
 {¶ 4} The Industrial Commission ultimately denied her right to workers' compensation. She appealed to the trial court. The parties stipulated to the facts. Ms. Hirschle moved for partial summary judgment on the issue of whether she suffered her injury "in the course of, and arising out of" her employment. Appellants, too, each moved for summary judgment on the same issue. The trial court granted Ms. Hirschle's motion and denied Appellants'. There remained the issue of her statutory entitlement to costs and attorney fees, so to avoid the necessity of a trial, the parties agreed to a second set of stipulations. The trial court concluded that Ms. Hirschle had the right to workers' compensation and ordered Appellants to pay her costs and attorneys' fees. Stillwater and the Bureau appeal from this judgment only the issue of her entitlement to workers' compensation.
 {¶ 5} Appellants each assign a single error to the trial court's decision. Stillwater asserts that
 {¶ 6} "THE TRIAL COURT ERRED IN DENYING THE COUNTY'S MOTION FOR SUMMARY JUDGMENT BECAUSE MRS. HIRSCHLE'S INJURY DID NOT OCCUR IN THE COURSE OF AND ARISING OUT OF HER EMPLOYMENT, FOR PURPOSES OF PARTICIPATION IN THE WORKERS COMPENSATION FUND."
 {¶ 7} The Bureau asserts similarly that
 {¶ 8} "THE TRIAL COURT ERRED IN DENYING THE BWC'S MOTION FOR SUMMARY JUDGMENT BECAUSE MS. HIRSCHLE'S INJURY DID NOT OCCUR IN THE COURSE OF AND ARISING OUT OF HER EMPLOYMENT BECAUSE HER PERSONAL ERRAND CONFERRED NO BENEFIT TO THE EMPLOYER."
 {¶ 9} They both argue that Ms. Hirschle was injured while engaging in a purely *Page 4 
personal activity. It was her day off, they argue, so she was on Stillwater's premises voluntarily. Also, they point out, she was not required to pick up her check. She could have had it directly deposited into her bank account, which she admits to having, or waited to receive it in the mail. We will address their assigned errors and arguments together.
 {¶ 10} Summary judgment should be granted when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Civ. R. 56(C). Before ruling on a motion, the court must construe all the evidence in the light most favorable to the non-moving party. Id. If reasonable minds can reach only the conclusion argued by the movant, the motion should be granted. Appellate courts review grants of summary judgment de novo. Comer v. Risko, 106 Ohio St.3d 185,2005-Ohio-4559, at ¶ 8. This means that the appellate court applies the same standard as did the trial court and determines, without deference to the trial court's decision, whether it erred.
 {¶ 11} Access to the workers' compensation fund is limited. Ohio law is "well settled that the Workmen's Compensation Act does not create a general insurance fund for the compensation for injuries in general to employees." Lohnes v. Young, Admr. (1963), 175 Ohio St. 291, 292,194 N.E.2d 428. Rather, a compensable injury is one that has a sufficiently strong connection to the injured person's employment. Bralley v.Daugherty (1980), 61 Ohio St.2d 302, 303, 401 N.E.2d 448.
 {¶ 12} The Workers' Compensation Act states that the required connection exists when the injury is "received in the course of, and arising out of the injured employee's employment." R.C. 4123.01(C). Both conjuncts in this formula must be satisfied. Fisher *Page 5 v. Mayfield (1990), 49 Ohio St.3d 275, 277, 551 N.E.2d 1271. And it is "axiomatic" that the formula be liberally construed "in favor of awarding benefits." Id. at 278.
 {¶ 13} Beginning with the less-complicated second conjunct, the question is whether the injury was one "arising out of" Ms. Hirschle's employment. This phrase refers to a "causal connection" between the injury and the employment. Fisher, at 277-278. "Whether there is a sufficient `causal connection' between an employee's injury and his employment . . . depends on the totality of the facts and circumstances surrounding the accident." Lord v. Daugherty (1981), 66 Ohio St.2d 441, at syllabus, 423 N.E.2d 96.
 {¶ 14} Here, Ms. Hirschle suffered her injury while walking back to her car, which was parked in Stillwater's employee parking lot, after obtaining her paycheck. "[T]he receipt of wages [is] a fundamental aspect of the employment relationship." Hoffman v. Workers' Comp. AppealBd. (Westmoreland Hosp.) (1999), 559 Pa. 655, 659, 741 A.2d 1286. The reason for this lies in the nature of an employee-employer relationship. At root it is one of contract-express or implied-in which "the employee agrees to perform work under the direction and control of the employer, and the employer agrees to pay the employee at an agreed rate." LakeLand Emp. Group of Akron, LLC v. Columber, 101 Ohio St.3d 242,2004-Ohio-786, at ¶ 17. This also means that an employer has the right to an employee's services, and an employee has the right to be paid for providing those services. Indeed, no sooner would an employment relationship cease if an employer stopped paying an employee than if an employee refused to work.
 {¶ 15} Stillwater let Ms. Hirschle choose how part of the contract would be satisfied. She chose to have it satisfied "face-to-face." Thus, Ms. Hirschle's injury arose *Page 6 
out of Stillwater's performance of a duty and her exercise of a right under the employment contract.
 {¶ 16} It is true that courts often examine three particular factors to help determine whether an injury arose out of employment. SeeLord, at syllabus (identifying the three factors). One of these factors asks whether the employer derived a benefit from the activity that caused the injury. Seizing on this factor, Appellants, the Bureau in particular, argue that Stillwater derived no benefit from Ms. Hirschle's presence on its premises; therefore, her injury did not arise out of her employment. Their premise is arguably correct, but their conclusion does not necessarily follow.
 {¶ 17} Fisher warns that "a reviewing court must examine the separate and distinct facts of each case." Fisher, at 280. Workers' compensation cases are very fact specific, said the Court. "As such, no one test or analysis can be said to apply to each and every factual possibility." Id. We observe that cases in which the Lord factors are examined generally concern activities that occurred off of the employer's premises and bore an uncertain connection to employment. Here, conversely, Ms. Hirschle suffered an injury on her employer's premises while exercising a right under her employment contract in a permitted way. This activity bears a definite connection to her employment, as we discussed above. Because the reason for her presence on Stillwater's premises was related to a fundamental aspect of her employment contract, there is no need for Stillwater to have derived a benefit from it. SeeNunn v. First Healthcare Corp (Sept. 10, 2004), Ky. App. No. 2003-CA-000777-MR, 2004 WL 2011282. Her injury has a causal connection to an important (especially to her) aspect of her employment. Therefore, her injury arose out of her employment, satisfying the coverage formula's first conjunct. *Page 7 
 {¶ 18} The somewhat more difficult question is whether Ms. Hirschle received the injury "in the course of" her employment. This conjunct relates primarily to the time, place, and circumstances of the accident that caused the injury. Fisher, at 277. It is important to remember that "[a]n injured employee need not be in the actual performance of his duties in order for his injury to be in the `course of employment.'"Sebek v. Cleveland Graphite Bronze Co. (1947), 148 Ohio St. 693, syllabus ¶ 2, 76 N.E.2d 892. Rather, "It is sufficient if he is engaged in a pursuit or undertaking consistent with his contract of hire and which in some logical manner pertains to or is incidental to his employment." Id. at syllabus ¶ 3.
 {¶ 19} Stated more sharply, then, because she was not there to perform her work duties, the question is whether Ms. Hirschle's act of walking to her car after picking up her paycheck was consistent with her employment contract and logically related to her employment. "The contract of employment, as to the matter of wages and their payment, is not fully terminated or satisfied until the workman's wages, already earned, are paid." Parrott v. Indus. Comm. Of Ohio (1945),145 Ohio St. 66, 71, 60 N.E.2d 660; 2 Larson Larson, Larson's Worker's Compensation Law § 26.03[1], at 26-10. Therefore, "where a workman remains on the premises or returns thereto to obtain his pay after work ceases, he is still acting in the course of his employment." Parrott, at 72 (citing this as the "English rule").
 {¶ 20} Ms. Hirschle suffered her injury while at Stillwater solely to obtain her paycheck, not to work. Although she was not required to pick it up, Stillwater's pay policy permited her the choice. As already mentioned, under the employment contract, Stillwater has the duty to pay her for her services. But neither the employment contract *Page 8 
nor the law governing employment relations dictates how the employer must perform this duty. Accordingly, an employer is generally free, if it chooses, to offer but one way to satisfy this duty. For example, inParrott the only way was to show up at the employer's pay-office on payday. Although this method was not expressly part of the employment contract, the Court said that it was a custom that was incorporated therein.
 {¶ 21} Unlike the employer in Parrott, it is Stillwater's policy to let each employee choose from one of three ways how this part of the contract will be satisfied. Whatever Stillwater's pay policy is (and nothing prevents it from changing the policy) becomes part of the employment contract that it has with its employees. Therefore, picking up her paycheck was not only consistent with Ms. Hirschle's contract of employment but expressly stated. It was also logically related to Stillwater's business. Because Stillwater's pay policy expressly permitted employees to pick up their paychecks on Thursday, it is logical that an employee who wants to obtain her pay on Thursday, but is not scheduled to work that day, would be on its premises for that sole reason.
 {¶ 22} This remains the analysis even though the activity that actually caused her injury was walking to her car. An injury that occurs in an employer's parking lot while walking to a vehicle, though incidental to employment, still occurs in the course of employment. SeeGriffin v. Hydra-Matic Division, General Motors Corp. (1988),39 Ohio St.3d 79, 529 N.E.2d 436 (injury suffered after slip and fall in parking lot after work is compensable); Marlow v. Goodyear Tire RubberCo. (1967), 10 Ohio St.2d 18, 225 N.E.2d 241 (injury suffered after auto accident in parking garage while leaving work is compensable). *Page 9 
 {¶ 23} But, Appellants insist, Ms. Hirschle was not required to pick up her paycheck. She could have chosen to have it directly deposited into her bank account or mailed to her home. She chose to drive to Stillwater on her day off-a purely voluntary activity. Therefore, her injury could not have been suffered while she was acting in the course of her employment because she was on a purely personal errand.
 {¶ 24} The problem with Appellants' argument is its equating of a voluntary activity with a purely personal activity. They are not necessarily the same. An activity engaged in voluntarily is not necessarily engaged in for purely personal reasons, as the case law teaches. For example, as was his custom, the employee in Indus. Comm. ofOhio v. Henry (1932), 124 Ohio St. 616, 180 N.E. 194, voluntarily left work each morning to eat breakfast at a nearby restaurant. Returning from breakfast one morning, he was killed crossing tracks that were adjacent to his place of work and necessary for him to cross. His fatal injury was held to have occurred in the course of employment.
 {¶ 25} In Fisher v. Mayfield a teacher volunteered to collect donations for her school's flower fund. Donations to the fund were voluntary, and the school neither ran nor controlled the fund. On her way to teach one morning, she decided to stop at another school to collect donations. She was injured after tripping on the front steps of that school. Her injury was received in the course of employment.
 {¶ 26} Finally, in Kohlmayer v. Keller (1970), 24 Ohio St.2d 10,263 N.E.2d 231, the employee was injured at a social event. The employer sponsored, supervised, and financed the event at his home. Its primary purpose was to improve employee relations. Attendance was voluntary, it was held during non-work hours, and no business was conducted. The employee broke his neck while using the provided swimming facilities. *Page 10 
The Court found that attendance at the event was consistent with the employment contract and logically related to employment. The employer's involvement meant that the event was not merely social but also existed to improve the employer's business, which did benefit, said the Court. Therefore, there was a sufficiently strong connection between the activity and employment that the injury was received in the course of employment.
 {¶ 27} The focus of the "in the course of" inquiry is the context of the accident causing the injury. That the injury occurs while engaging in a voluntary activity is irrelevant. Therefore, Ms. Hirschle received her injury "in the course of" her employment.
 {¶ 28} Shedding some light on the issue here are cases involving an employee who is injured while eating a meal on her employer's premises where meals are provided as part of wages. This was the case inSebek v. Cleveland Graphite Bronze Co. with the claimant's meals in the employer's cafeteria. One such meal poisoned her. The Court held that she was injured in the course of her employment. In reaching this conclusion, the Court quoted from two cases in other jurisdictions that had the same factual scenario and with whose reasoning and conclusions it agreed. Said one of the courts, "True, they were not working for the defendant while eating. But their meals were part of their pay, and so were connected with their employment." Id. at 699 (citation omitted). It concluded, "The risk of injury in the eating of the meals was in principle like the risk of injury in the collection of their pay in money or in other benefits." Id. at 699-700. The other court concluded similarly. "Nor can the contention that the accident did not arise out of and in the course of the employment be sustained. The *Page 11 
mere fact that an employee is not actually engaged at his work at the time of injury does not as a matter of law relieve the employer." Id. at 700 (citation omitted). "Under the terms of employment," said the court, "board was furnished. . . ., and although the partaking of food was personal in character, nevertheless it was so incidental to his employment that the accident did arise out of and in the course of employment." Id.
 {¶ 29} Appellants contend that Zingale v. Maria Heckman Assoc. (July 9, 1998), Cuyahoga App. No. 72914, 1998 WL 382175, should control resolution of this issue. There, a woman employed by a temporary employment agency drove from her assigned workplace to the agency's office to pick up her paycheck. The office consisted of a suite in a multi-suite building. Normally, her paycheck was mailed to her but this time she requested to pick it up, which her employer accommodated. As she walked back to her car, which was parked in a general-use parking lot, to return to work, she slipped and fell and broke her ankle. The employer argued that she was on a personal errand, and therefore, she was not within the scope of her employment. The court, however, found that the injury did not occur on the employer's premises or within the zone of her employment. Rather, she was merely on her way to her place of employment. Consequently, the coming-and-going rule applied to bar compensation for her injury, just like it would apply to an employee injured while commuting from home to her place of work. "In the normal context, an employee's commute to a fixed work site bears no meaningful relation to his employment contract and serves no purpose of the employer's business." Ruckman v. Cubby Drilling, Inc. (1998),81 Ohio St.3d 117, 121, 689 N.E.2d 917. *Page 12 
 {¶ 30} Zingale is distinguishable from the case before us. Unlike for Ms. Hirschle, it was not the employee's custom to pick up her paycheck nor was it a policy of the employer, unlike Stillwater, to give employees a choice. The employee specially requested to pick up her paycheck. Thus, the connection to the employment contract is less certain. Also, unlike Ms. Hirschle, the employee was not on her employer's premises when she was injured.
 {¶ 31} Unlike Ohio, other jurisdictions have directly addressed the central question in the instant case. Most that have, found that such an injury is received within the scope of employment. See, generally,Dunlap v. Clinton Valley Center (1988), 169 Mich.App. 354,425 N.W.2d 553 (finding an employee within the course of employment who was injured on employer's premises after returning solely to pick up her paycheck);Martinez v. Stoller (N.M.App. 1981), 96 N.M. 571, 632 P.2d 1209; St. Anthony Hosp. v. James, 889 P.2d 1279, 1994 OK Civ.App. 176 (finding an injury compensable that occurred on employer's premises after retrieving paycheck).
 {¶ 32} Pennsylvania also sees such injuries as being received in the course of an employee's employment and arising out of it. The facts inHoffman v. Workers' Comp. App. Bd. (Westmoreland Hosp.), 559 Pa. 655,741 A.2d 1286, are remarkably similar to those in the instant case. The employer had a policy that offered its employees three ways to receive their pay: direct deposit, delivery by regular mail, personal retrieval. The employee, like Ms. Hirschle, was not scheduled to work on the day that she could pick up her paycheck. So she drove in solely to pick it up, her customary practice. While on the premises, she was injured. Similar to Appellants in the instant case, the employer *Page 13 
argued that her presence on its premises was merely personal and not in furtherance of its business. It pointed out that she was not required to pick up her paycheck.
 {¶ 33} The court rejected these arguments and held that her injury had occurred within the scope of her employment. Receipt of wages is fundamental to the employment relationship, the court said. That she had other ways to receive her wages is not significant. "[R]egardless of other available options, an employee's presence at the workplace to obtain a paycheck pursuant to an employer-approved practice bears a sufficient relationship to a necessary affair of the employer (payment of due wages) to fall within the course of employment." Id. at 660.
 {¶ 34} Kentucky agrees. The employee in Nunn v. First HealthcareCorp (Sept. 10, 2004), Ky. App. No. 2003-CA-000777-MR, 2004 WL 2011282, suffered an injury, like the employee in Hoffman and Ms. Hirschle, while on her employer's premises solely to pick up her paycheck. The court found that picking up a paycheck on an employer's premises is sufficiently work-related to be compensable. Notable is its express rejection of the argument that compensation coverage requires showing that the employer derived a benefit from the employee's personal presence outside the "normal incidents of the employment relationship." Id. at *3. She reasonably took advantage of an approved option to engage in an activity that was a fundamental part of her employment, said the court.
 {¶ 35} Having a policy that permits an employee to pick up her paycheck the day before payday, Stillwater should not be surprised to learn that an employee who wanted her paycheck early, but did not work on Thursday, drove in solely for that purpose. Because Stillwater gives its employees this option, even though it is not required to do *Page 14 
so, it seems fair that Stillwater should shoulder the risk of an injury like that suffered by Ms. Hirschle.
 {¶ 36} An employer paying for services rendered and an employee obtaining due payment are activities that concern duties and rights fundamental to the employment contract. They are the equivalent of an employee performing her duty to work and an employer obtaining the right to her services. It is clear that an injury suffered in an employer's parking lot after an employee finishes performing her work duties at the place of employment generally is compensable. See Griffin andMarlow. This conclusion would likely be the same were an employer to give an employee the choice of working one of three shifts by which to fulfill her duty to work. The injury would be compensable regardless of which shift the employee was leaving. Likewise, therefore, when an employer allows an employee the choice to have it fulfill its duty by picking up her paycheck on premises, an injury suffered in an employer's parking lot after the employer finishes performing its duty ought to be compensable.
 {¶ 37} The trial court concluded that there were no issues of material fact and Ms. Hirschle was entitled to judgment as a matter of law. We agree. The trial court, therefore, did not err, and its judgment is affirmed.
DONOVAN, P.J., and FAIN, J., concur.
Copies mailed to:
Gary D. Plunkett Brett R. Bissonnette Mathias H. Heck, Jr. Robert L. Guehl Nancy H. Rogers Stephen D. Plymale *Page 15 
Hon. Timothy N. O'Connell *Page 1