GUZAUSKAS

v.

RYAN, Admr., et al.

2010-Ohio-3728.]

Clermont County Municipal Court, Ohio.

No. 2008 CVD 0955.

Decided March 12, 2010.

20

22

Roeller & Roeller, L.L.C., and Robert K. Roeller, for plaintiff.

Graydon, Head & Ritchey, L.L.P., and Everett L. Greene, for defendant Vita Enterprises, L.L.C.

Richard Cordray, Attorney General, and Steven P. Fixler, Assistant Attorney General, for defendant Marsha P. Ryan.

HADDAD, Judge.

{¶ 1} This matter came before the court on November 9, 2009, pursuant to a joint motion for summary judgment filed by the defendants. Robert Roeller represented the plaintiff and Everett Greene represented the defendant, Vita Enterprises, L.L.C. Steven Fixler represented the defendant, Administrator of the Ohio Bureau of Workers' Compensation. The parties have briefed their respective positions, and upon hearing oral arguments, the court took the matter under advisement, and now renders the following decision.

## FINDINGS OF FACT

{¶ 2} The plaintiff, Joyce Guzauskas, is the mother and dependent of the decedent, Cynthia M. Guzauskas. Cynthia was employed by Mama Vita's Ristorante Italiano ("Vita's"), which was operated by the defendant, Vita Enterprises, L.L.C. On or about January 4, 2005, Cynthia left work at the end of her workday and was driving home when she was involved in an automobile collision. Cynthia was transported to Bethesda Hospital following the collision and subsequent blood-alcohol testing at the hospital showed that her blood-alcohol level was 302 mg/dL, or .302. She was then transported to University Hospital, where she later died.

{¶ 3} Following Cynthia's death, and on or about August 8, 2006, Joyce filed an application for death benefits with the Ohio Bureau of Workers' Compensation ("OBWC"). That claim was denied on or about September 21, 2006, and the matter was referred to the Industrial Commission for a hearing. A district hearing officer denied the application by order dated March 29, 2007, and mailed April 3, 2007. The plaintiff filed a timely appeal, and, by order dated February 22, 2008, and mailed February 29, 2008, a staff hearing officer denied the appeal. Plaintiff appealed the decision of the staff hearing officer, and by order dated March 24, 2008, and mailed March 26, 2008, the Industrial Commission refused to hear the appeal. That decision was the final decision denying Joyce's application for death benefits; thus, the plaintiff appealed the matter to the Clermont County Common Pleas Court. The defendants filed a joint motion for summary judgment arguing that both the "coming-and-going rule" and Cynthia's intoxication preclude her mother from receiving benefits as a result of her death.

## THE LEGAL STANDARD

{¶ 4} In considering a motion for summary judgment, the court should review the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact. Civ.R. 56(C). Summary judgment is proper when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. See also *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201. The party requesting summary judgment bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Harless* at 66, 8 O.O.3d 73, 375 N.E.2d 46; *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264. In determining whether a genuine issue of

material fact exists, the court must answer the following inquiry: "Does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law?" *Wilson v. Maple,* Clermont App. No. CA2005–08–075, 2006-Ohio-3536, 2006 WL 1880505, at 18. The moving party must specifically point to evidence that affirmatively demonstrates that the nonmoving party has no evidence to support its claim. *Dresher* at 293, 662 N.E.2d 264.

{¶ 5} Once the moving party satisfies its burden, "the nonmoving party may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing the existence of a genuine triable issue." *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197. "Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party." *Parmore Group v. G & V Invests., Ltd.,* Franklin App. Nos. 05AP–756 and 06AP–1106, 2006-Ohio-6986, 2006 WL 3825259, ¶ 10. See also *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 359, 604 N.E.2d 138.

## LEGAL ANALYSIS

{¶ 6} The defendants first argue that pursuant to R.C. 4123.01(C), the decedent's injuries must have been received in the course of and arising out of her employment with the defendant, Vita's. They assert that because the decedent was a fixed-situs employee, the coming-and-going rule precludes her mother from receiving benefits resulting from her death. It is their contention that when the collision occurred, the decedent was traveling home from work and was not performing duties pursuant to her employment with Vita's.

{¶ 7} Ohio courts have held that the " 'Workmen's Compensation Act does not create a general insurance fund for the compensation for injuries in general to employees.' " *Oberhauser v. Mabe,* Butler App. No. CA2008–11–266, 2009-Ohio-3680, 2009 WL 2232012, ¶ 14, quoting *Lohnes v. Young* (1963), 175 Ohio St. 291, 292, 25 O.O.2d 136, 194 N.E.2d 428. Instead, a compensable injury is one that has a sufficiently strong connection to the person's employment. *Id.,* quoting *Hirschle v. Mabe,* Montgomery App. Nos. 22954 and 22975, 2009-Ohio-1949, 2009 WL 1114267, ¶ 11.

{¶ 8} Generally, to be entitled to receive Workers' Compensation Fund payments, one must sustain "any injury, whether caused by external accidental means or accidental in character and result, *received in the course of, and arising out of,* the injured employee's employment" (Emphasis added.) R.C. 4123.01(C). " ' "In the course of" refers to the time, place, and circumstances of the injury,

and limits compensation to injuries received while the employee was engaged in a duty required by the employer. *Fisher v. Mayfield* (1990), 49 Ohio St.3d 275, 551 N.E.2d 1271. "Arising out of" requires a causal connection between the injury and the employment.'" *Klamert v. Cleveland*, 186 Ohio App.3d 268, 2010-Ohio-443, 927 N.E.2d 618, ¶ 9, quoting *Bowden v. Cleveland Hts.—Univ. Hts. Schools*, Cuyahoga App. No. 89414, 2007-Ohio-6804, 2007 WL 4440888, at ¶ 11. "Both prongs must be satisfied in order to receive benefits." Id., citing *Fisher* at 277, 551 N.E.2d 1271; *Oberhauser* at ¶ 15. The statute, however, is to be liberally construed in favor of awarding benefits. *Oberhauser* at ¶ 15, citing *Fisher* at 278, 551 N.E.2d 1271.

## THE COMING-AND-GOING RULE

{¶ 9} "The coming-and-going rule is a tool used to determine whether an injury suffered by an employee in a traffic accident occurs 'in the course of' and 'arise[s] out of' the employment relationship so as to constitute a compensable injury under R.C. 4123.01(C)." *Ruckman v. Cubby Drilling Inc.* (1998), 81 Ohio St.3d 117, 119, 689 N.E.2d 917. See also *Klamert* at ¶ 10. The general rule is that " 'an employee with a fixed place of employment, who is injured while traveling to or from his place of employment, is not entitled to participate in the Workers' Compensation Fund because the requisite causal connection between injury and the employment does not exist.' " *Ruckman* at 119, 689 N.E.2d 917, quoting *MTD Prods., Inc. v. Robatin* (1991), 61 Ohio St.3d 66, 68, 572 N.E.2d 661; *Klamert* at ¶ 10. The rationale behind this general rule is that " '[t]he constitution and the statute, providing for compensation from a fund created by assessments upon the industry itself, contemplate only those hazards to be encountered by the employe[e] in the discharge of the duties of his employment, and do not embrace risks and hazards, such as those of travel to and from his place of actual employment over streets and highways, which are similarly encountered by the public generally.' " *Ruckman* at 119, 689 N.E.2d 917, quoting *Indus. Comm. v. Baker* (1933), 127 Ohio St. 345, 188 N.E. 560, paragraph four of the syllabus.

## SITUS OF EMPLOYMENT

{¶ 10} In order to determine whether the coming-and-going rule precludes Cynthia's mother from participating in the fund, the court must first determine if Cynthia was a fixed-situs employee. In making this determination, the court must focus on whether she commenced her substantial employment duties only after arriving at a specific and identifiable work site designated by her employer. Id., citing *Indus. Comm. v. Heil* (1931), 123 Ohio St. 604, 606–607, 176 N.E. 458 and 1 Larson's Workers' Compensation Law (1997) 4–194 to 4–200. This focus is the same even when the employee is reassigned to a different work

place monthly, weekly, or even daily, since each particular job site may constitute a fixed place of employment.   Id. at 120, 689 N.E.2d 917.

{¶ 11} Lucy Davis testified in her affidavit that she is the owner of Vita Enterprises, which operates Mama Vita's restaurant located at 6405 Branch Hill–Guinea Pike in Loveland, Ohio.[1] Her former husband, Craig Davis, managed the restaurant from August 2002 until his stroke in November 2004.[2]   He had hired the decedent in August 2002, when the restaurant opened, and she worked there until she resigned in August 2004.[3]   Cynthia was then rehired in September 2004.[4]   After Craig Davis suffered a stroke in November 2004, Cynthia acted as manager of the restaurant during his hospitalization.[5]   Cynthia voluntarily used her privately owned vehicle to make runs to Sam's Club in Craig Davis's absence.[6]   She was not required to drive her privately owned vehicle to work.[7] Further, Cynthia was not making a run to Sam's Club when she was injured on January 4, 2005.[8]

{¶ 12} Based upon the foregoing, the court finds that Cynthia was a fixed-situs employee, since her substantial duties began only after she arrived at Vita's. While it may be true that she would voluntarily make runs to Sam's Club, the court finds that this does not change her status as a fixed-situs employee, as she was aware at all times of a specific and identifiable work place designated by her employers, whether it was at Vita's or at Sam's Club.

{¶ 13} Because Cynthia was a fixed-situs employee at the time she was involved in her accident, the court finds that the coming-and-going rule is applicable.   Cynthia was traveling home from work when she had her accident, thus the court finds that her mother is precluded from participating in the Workers' Compensation Fund unless one of the exceptions to the coming-and-going rule apply.

---

1.   See affidavit of Lucy Davis, filed September 28, 2009, ¶ 2.

2.   Id., ¶ 3.

3.   Id., ¶ 7, 9.

4.   Id., ¶ 10.

5.   Id., ¶ 13, 15.   See also affidavit of David Oden, filed September 28, 2009, ¶ 4.

6.   Affidavit of Lucy Davis, ¶ 16–17.

7.   Id., ¶ 19.

8.   Id., ¶ 20.   See also affidavit of David Oden, ¶ 5.

{¶ 14} The court in *Ruckman* found that the classification of an employee as a fixed-situs employee does not end the inquiry. A claimant may avoid the force of the coming-and-going rule in the rare circumstance when he or she can demonstrate that the injury was received "in the course of" and "arising out of" her employment. *Ruckman* at 120, 689 N.E.2d 917, citing *MTD Prods.* at 66, 572 N.E.2d 661. In order to avoid the force of the coming-and-going rule, the claimant must prove both that the injury occurred in the course of employment and that it arose out of the employment.

## Coming-and-Going Rule:

### The Course-of-Employment Requirement

{¶ 15} The course-of-employment requirement involves the time, place, and circumstances of the injury. Id. at 120, 689 N.E.2d 917, citing *Fisher* at 277, 551 N.E.2d 1271. These are factors to be used in determining the required nexus between the employment relationship and the injurious activity, but they are not the ultimate object of a course-of-employment inquiry. Id. "The phrase 'in the course of employment' limits compensable injuries to those sustained by an employee while performing a required duty in the employer's service." Id., citing *Indus. Comm. v. Gintert* (1934), 128 Ohio St. 129, 133–134, 190 N.E. 400. See also *Oberhauser*, 2009-Ohio-3680, at ¶ 16. It is not required, however, that the employer be injured in the actual performance of work for her employer. *Ruckman* at 120, 689 N.E.2d 917. The injury, instead, must be sustained while the employee engages in an activity that is consistent with her contract for hire and that is logically related to the employer's business. Id., citing *Kohlmayer v. Keller* (1970), 24 Ohio St.2d 10, 12, 53 O.O.2d 6, 263 N.E.2d 231; *Oberhauser* at ¶ 16.

{¶ 16} The plaintiff argues that Cynthia was within the course of her employment when she left her house each morning, as she was required to bring her vehicle to work to pick up kitchen supplies and deliver catered food. It is the plaintiff's contention that Cynthia was within the scope of her employment from the time she took her vehicle from her garage until she returned it each night. She further contends that Cynthia was not allowed to use alternate transportation or show up to work without a vehicle.

{¶ 17} The uncontroverted evidence, however, indicates that Cynthia was not required to drive her privately owned vehicle to work each day. Further, the uncontroverted evidence proves that Cynthia was not required to use her privately owned vehicle to pick up supplies, but instead did so voluntarily. Since the defendants have specifically pointed to evidence that affirmatively demonstrates that the plaintiff has no evidence to support her claim that Cynthia was

within the course of her employment when driving her privately owned vehicle home from work, the plaintiff cannot rest on the mere allegations of her complaint. Instead, her response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing the existence of a genuine triable issue.

{¶ 18} The plaintiff has failed to set forth specific facts showing the existence of a genuine triable issue, as there is no affidavit or other Civ.R. 56 evidence in support of her response. The plaintiff argues that it was part of Cynthia's employment agreement that she drive her privately owned vehicle to work in order to make runs to Sam's Club and for catering purposes. She points to Exhibit 3 of the affidavit of Lucy Davis in support of her argument.

{¶ 19} However, Exhibit 3 is a letter to the owners of Vita's indicating Cynthia's desire to resume working at the restaurant. She specifically states in her letter, "Included are the terms I am *proposing* for a fair balance between work and quality-of-life for all those concerned. *I hope we can reach a mutual agreement* that will be beneficial to all for future harmony" (Emphasis added.) [9] Attached to that are the demands and proposals that Cynthia was offering.

{¶ 20} Most importantly, the court notes that nothing in the attachment to Exhibit 3 requires Cynthia to drive her privately owned vehicle to and from work. Further, the court notes that this evidence presented by the defendant, and used by the plaintiff, does not prove what the terms of Cynthia's employment actually were. While Cynthia offers to make Sam's Club runs and prepare and produce catering events, there is no evidence presented that this offer became part of her employment agreement. According to the letter, Cynthia was hoping to reach a mutual agreement with Lucy and Craig Davis on the terms of her employment, but had not yet done so. Additionally, the evidence clearly proves that Cynthia was not required to perform these tasks, but instead did so voluntarily.

{¶ 21} In order to create a genuine triable issue, the plaintiff would have needed to provide the court with a competing affidavit, deposition, or other evidence under Civ.R. 56 indicating that the tasks of catering events and making runs to Sam's Club were mandatory, as was her need to drive her own vehicle to and from work. The plaintiff has failed to do so.

{¶ 22} In the context of this case, Cynthia's commute home from her place of employment bears no meaningful relationship to her employment contract and serves no purpose to the employer's business. Cynthia was not engaging in the promotion of her employer's business at the time of the automobile accident; thus there is clearly no relationship between her employment and the injury.

---

9. See affidavit of Lucy Davis, Exhibit 3.

{¶ 23} Based upon the foregoing, the court finds that there is no genuine issue of material fact remaining and that reasonable minds can come to but one conclusion and that conclusion is that Cynthia was not within the course of employment when she was driving her privately owned vehicle home from work that evening. Since both course-of-employment and arising-out-of-employment elements are required and the plaintiff has failed to satisfy the first requirement, the court finds that the defendants are entitled to judgment as a matter of law.

### Coming-and-Going Rule:

#### Arising-Out-of-Employment Requirement

{¶ 24} Even if the court had determined that Cynthia was within the course of employment when she had her accident, the outcome would be the same, because the defendants have proven that there is no genuine issue of material fact as to the arising-out-of-employment requirement. This requirement contemplates a causal connection between employment and injury. *Ruckman*, 81 Ohio St.3d at 121–122, 689 N.E.2d 917, quoting *Fisher* at 277–278, 551 N.E.2d 1271. In making this determination, courts have applied three separate tests, depending upon the circumstances of the case.

{¶ 25} The first of those is the totality-of-the-circumstances test, established in *Lord v. Daugherty* (1981), 66 Ohio St.2d 441, 20 O.O.3d 376, 423 N.E.2d 96. Courts primarily analyze three factors in determining if a causal connection exists: (1) the proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene. *Ruckman* at 122, 689 N.E.2d 917, citing *Lord* at the syllabus. See also *Oberhauser* at ¶ 17. The court notes that the plaintiff does not argue this test in her response; however, even assuming that she had, the court finds that based upon a consideration of the totality of the circumstances, the *Lord* test does not create a causal connection between employment and injury.

{¶ 26} The second test is the zone-of-employment test. "The 'zone of employment' is 'the place of employment and the area thereabout, including the means of ingress thereto and egress therefrom, under control of the employer.'" *Johnston v. Case W. Reserve Univ.* (2001), 145 Ohio App.3d 77, 83, 761 N.E.2d 1113, quoting *Marlow v. Goodyear Tire & Rubber Co.* (1967), 10 Ohio St.2d 18, 39 O.O.2d 11, 225 N.E.2d 241. Again, the plaintiff does not argue this test, but, even assuming that she had, the court finds that Cynthia was not within the zone of employment at the time of her accident because the public roadway was not under the control of her employer.

{¶ 27} The final test, which the plaintiff does argue in her response, is the special-hazard exception to the coming-and-going rule. This exception provides that a causal connection between employment and injury exists when the risk was neither " 'distinctive in nature [n]or quantitatively greater than the risk common to the public.' " *Ruckman*, 81 Ohio St.3d at 123, 689 N.E.2d 917, quoting *MTD Prods.* at 69, 572 N.E.2d 661. Specifically, " '[a] fixed-situs employee is entitled to workers' compensation benefits for injuries occurring while coming and going from or to his place of employment where the travel serves a function of the employer's business and creates a risk that is distinctive in nature from or quantitatively greater than risks common to the public.' " *Seese v. Bur. of Workers' Comp.*, Trumbull App. No. 2009–T–0018, 2009-Ohio-6521, 2009 WL 4757081, ¶ 31, quoting *Ruckman* at paragraph two of the syllabus.[10] This exception applies where (1) " 'but for' her employment, [Cynthia] would not have been at the location where the injury occurred and (2) the risk is distinctive in nature or quantitatively greater than the risk common to the public." *Johnston* at 84, 761 N.E.2d 1113, citing *Weiss v. Univ. Hosp. of Cleveland* (2000), 137 Ohio App.3d 425, 432, 738 N.E.2d 884.

{¶ 28} The plaintiff asserts that Cynthia's intoxication caused her death; thus, it is her contention that her employer created the hazard that resulted in her death. She points to the affidavit of Dr. Marc Whitsett in support of her argument.

{¶ 29} The court finds that "[w]ork-related intoxication is a hazard of the employment that follows an employee when he or she leaves work." *Siegel v. Jozac Corp.* (July 26, 2001), Cuyahoga App. No 78465, 2001 WL 840375, at 4.[11] "When an employer encourages or condones excessive drinking on the job and in fact profits from an employee's drinking * * * the employer ought to be held responsible for foreseeable injuries suffered by the employee because of the resulting intoxication." Id.

{¶ 30} While it is undisputed that Cynthia was intoxicated at the time of her accident, there is no proof in the record that her employer encouraged or

---

10. The court notes that the *Seese* court also discusses a special-mission exception to the coming-and-going rule. The court finds that this exception has not been argued, nor is there evidence that it applies in this case. For purposes of clarity, that exception provides that "employment exists where the injury is sustained by the employee while performing a special task, service, mission, or errand for his employer, even before or after customary working hours, or on a day on which he does not ordinarily work. For the exception to arise, the mission must be the major factor in the journey or movement, and not merely incidental thereto, and the mission must be a substantial one." *Seese* at ¶ 34.

11. The court notes that the cases cited by the *Siegel* court use the term "zone of danger." The *Siegel* court determined, however, that both "zone of danger" and "special hazard" create the same exception to the coming-and-going rule.

condoned her excessive drinking on the job. To the contrary, the evidence indicates that Cynthia's employer attempted to prevent her from drinking on the job. Specifically, Lucy Davis testified that in both April and May 2004, her husband warned Cynthia about drinking on the job in violation of the drug-free-workplace policy and advised her that another incident would result in termination of her employment.[12] Further, Davis testified that Vita's has a drug-free-workplace policy in effect.[13] Additionally, she testified that Cynthia did not request that she be permitted to drink on the job as a condition of her employment.[14] Further, neither she nor her husband authorized Cynthia to drink on the job as a condition of her employment.[15] Upon hearing about Cynthia's accident, Davis testified that she contacted Jamie Fields and David Oden, both of whom worked with Cynthia that evening, and both denied serving Cynthia any alcoholic beverages.[16] Further, David Oden testified in his affidavit that he did not give Cynthia any alcoholic drinks that evening and he did not see Fields do so either.[17] He further testified that upon returning to work the next day, he discovered that Cynthia had hidden some beers in the cold-storage area beneath a preparation table.[18]

{¶ 31} Based upon the foregoing, the court finds that while it may be true that Cynthia's intoxication was the cause of her accident, there is no evidence in the record to prove that her employer encouraged or condoned her drinking on the job. The evidence actually proves the opposite, that alcohol was not a condition of employment and that Cynthia had hidden the alcohol during her workday. Since the plaintiff has failed to present evidence under Civ.R. 56 contrary to that provided by the defendants, the court finds that no genuine issue of material fact remains and that reasonable minds can come to but one conclusion and that conclusion is that Cynthia's intoxication was not a special hazard created by her employment, but was instead a hazard created by Cynthia herself. Therefore, based upon the foregoing, the court finds that the defendants are entitled to

---

12. See affidavit of Lucy Davis, ¶ 8. See also affidavit of Lucy Davis, Exhibit 2.

13. See affidavit of Lucy Davis, ¶ 4. See also affidavit of Lucy Davis, Exhibit 1, Workplace Policies Section, ¶ F.

14. See affidavit of Lucy Davis, ¶ 12. See also affidavit of Lucy Davis, Exhibit 3.

15. See affidavit of Lucy Davis, ¶ 11.

16. Id., ¶ 22–26.

17. See affidavit of David Oden, ¶ 6–7.

18. Id., ¶ 9

judgment as a matter of law on the issue whether Cynthia's injuries arose out of her employment with Vita's.

{¶ 32} Even if the court were to find that the coming-and-going rule were not applicable either because Cynthia was not a fixed-situs employee or because one of the exceptions applied, the outcome of the case would not change. R.C. 4123.54 provides that the employee or the employee's dependents are not entitled to compensation for injuries "[c]aused by the employee being intoxicated or under the influence of a controlled substance not prescribed by a physician where the intoxication or being under the influence of the controlled substance not prescribed by a physician was the proximate cause of the injury." R.C. 4123.54(A)(2). There is no dispute in this case that Cynthia was intoxicated at the time of her accident.[19] Further, there is no dispute that the intoxication was the proximate cause of her injuries.[20] The plaintiff does not dispute that Cynthia was intoxicated and even argues in her response that Cynthia's intoxication caused her death.[21]

{¶ 33} Based upon the foregoing, the court finds that there is no genuine issue of material fact remaining and that reasonable minds could come to but one conclusion and that conclusion is that Cynthia was intoxicated and that the intoxication was the proximate cause of the accident resulting in her death. Therefore, the defendants are entitled to judgment as a matter of law pursuant to R.C. 4123.54(A)(2).

## CONCLUSION

{¶ 34} While the court is mindful that this case arises as a result of the tragic death of Cynthia Guzauskas, the court simply cannot disregard Ohio law.

{¶ 35} Therefore, based upon the court's analysis and the uncontroverted evidence before the court, the court finds that the defendants are entitled to summary judgment for a number of reasons. First, the court finds that Cynthia was a fixed-situs employee subject to the coming-and-going rule. Second, the court finds that Cynthia was not within the course of her employment at the time of her injuries. Third, the court finds that Cynthia's injuries did not arise from her employment, as none of the exceptions/tests cited by the court apply. Finally, Cynthia was intoxicated at the time of her injury, and that intoxication

---

19. See affidavit of Marc Whitsett, M.D., filed September 28, 2009, ¶ 3–4; Plaintiff's memorandum in opposition to defendants' motion for summary judgment, filed October 23, 2009, p. 4.

20. Id., ¶ 4.

21. See plaintiff's memorandum in opposition to defendants' motion for summary judgment, filed October 23, 2009, p. 4.

**34**

was the proximate cause of her injury, thus R.C. 4123.54(A)(2) precludes participation in the fund.

{¶ 36} Based upon the foregoing and the competent, credible evidence before the court, the court finds that no genuine issue of material fact remains and that reasonable minds can come to but one conclusion and that conclusion is adverse to the plaintiff. Therefore, the court finds, having construed the evidence in a light most favorable to the plaintiff, that the defendants are entitled to judgment as a matter of law.

{¶ 37} Based upon the findings of the court, the case is hereby terminated in its entirety.

{¶ 38} It is ordered, that this decision shall serve as the judgment entry in this matter.

So ordered.