[Cite as *Hurley v. Group Mgt. Servs., Inc.*, 2022-Ohio-4709.]

COURT OF APPEALS
MORROW COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| RYAN M. HURLEY | : | JUDGES:<br>Hon. Earle E.. Wise, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Appellant | : | Hon. William B. Hoffman, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2022 CA 0009 |
| GROUP MANAGEMENT | : |  |
| SERVICES, INC., ET AL | : |  |
|  | : | OPINION |
| Appellees |  |  |

CHARACTER OF PROCEEDING:      Civil appeal from the Morrow County Court of Common Pleas, Case No. 2021 CV 00063

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      December 27, 2022

APPEARANCES:

For - Appellee

MEREDITH ULLMAN
6480 Rockside Woods Blvd. S, Ste 350
Cleveland, OH 44131

For - Appellant

JENNIFER L. LAWTHER
27730 Euclid Avenue
Cleveland, OH 44132

*Gwin, J.,*

{¶1}   Appellant appeals the July 19, 2022 judgment entry of the Morrow County Court of Common Pleas granting appellee's motion for summary judgment.

*Facts & Procedural History*

{¶2}   Appellee Group Management Services ("GMS") is a self-insured professional employer organization who provides workers' compensation coverage for employers under the GMS self-insured policy.  As part of the agreement, GMS processes employee payroll and assists with human resources tasks.  On June 22, 2020, when appellant was injured, he was an employee of Beneleaves, a marijuana processor and distributor located in Columbus, Ohio.  Beneleaves is a client of GMS.  GMS is the employer of record for workers' compensation risk purposes, while Beneleaves is the controlling employer regarding personnel decisions and supervising the employees.

{¶3}   On June 22, 2020, appellant sustained injuries in a motor vehicle accident while he was driving from his home in Valley View to Beneleaves' place of business in Columbus, Ohio.  Appellant applied for workers' compensation benefits on July 23, 2020.

{¶4}   The Industrial Commission denied appellant's claim at both levels by applying the coming and going rule.  The Industrial Commission denied further appeal. After the denials, appellant appealed to the Morrow County Court of Common Pleas. Appellee filed a motion for summary judgment on June 3, 2022.  Appellant filed a memorandum in opposition on July 1, 2022.  Appellee field a reply on July 11, 2022.

{¶5}   Attached to appellee's motion for summary judgment are the depositions of appellant and Jeff Hollenback ("Hollenback"), the chief operating officer of Beneleaves.

**{¶6}** The following information was obtained from Hollenback's deposition. Appellant, like all of the company's employees, initially worked from home because the facility was not yet constructed. Once the construction was finished, all of the employees, including appellant, were required to be at the facility in person. Appellant began driving to the facility from his home in Valley View. At that point, appellant became the manager of ten to twelve people. He also was in charge of the Marijuana Enforcement Tracking Reporting & Compliance ("METRC") system. Hollenback stated that to do this job, appellant "definitely had to be at the facility" and described it as a "hands-on job on a daily basis" because it involves physically moving things and applying tags to them. Once appellant started working at the facility, the company rented a house for appellant so he did not have to commute every day.

**{¶7}** Until March of 2020, appellant worked at the facility every Monday through Thursday, starting at 8:00 a.m. Monday, and ending Thursday afternoon. Starting in March of 2020, the company let appellant arrive at the facility at 10:00 a.m. on Mondays. When Hollenback agreed to this change, there was no change to appellant's compensation or job duties. Appellant had "no work he need[ed] to do" after these work hours, but appellant possibly took a few phone calls to assist other employees with the METRC system. When asked if the company required appellant to take these phone calls, Hollenback stated, "absolutely not * * * no before work and no after work." However, Hollenback wanted appellant to answer phone calls between 8:00 a.m. and 10:00 a.m. on Monday mornings "if he was available." Hollenback estimated these phone calls to be about 5% of appellant's total job duties.

{¶8} The following facts were testified to by appellant in his deposition. Beneleaves is a marijuana processing company, taking raw marijuana and converting it to an oil which is either sold as is, or put into a variety of products such as gummies, cookies, or vape pens. When appellant was initially hired, he was an independent contractor and was working primarily from home, attending meetings and reviewing plans for the facility that was being constructed. Appellant officially became an employee when he, "began coming to the facility because the facility was completed." Appellant also worked at the Valley View fire department, primary on Fridays and week-ends.

{¶9} Prior to March of 2020, appellant came into the facility at 8:00 a.m. on Monday and left for Valley View on Thursday afternoon. While he was in Columbus before returning home on Thursdays, appellant stayed at a house rented by Beneleaves. In March of 2020, he started leaving Valley View at 7:45 a.m. and arriving at the facility around 10:00 a.m. This was appellant's decision. He stated, "at that time, I knew my responsibilities were increasing, so I was going to begin negotiating * * * I was able to work better hours at the fire department as well as I didn't have an interest in continuing working forty hours for the company * * * I was trying to negotiate a better deal for me."

{¶10} The company did not pay appellant mileage for his commute from Valley View (near Cleveland) to Columbus. Appellant did not have a company car. Appellant's commute from Valley View to Columbus was 125 miles. The accident occurred when appellant was approximately twenty-five miles away from Columbus. Appellant was on the phone with his girlfriend at the time of the accident.

{¶11} Appellant's official title was "Director of IT." This mainly entailed being in charge of the METRC system, which is a state-mandated method of tracking raw

marijuana, and involves physically placing tags on the products at each stage of production. For each of these tags, appellant had to manually type the barcodes into the system. Appellant was also the "extraction manager," which meant he was in charge of assigning ten to twelve employees tasks each morning at the facility.

{¶12} Appellant believes that if another employee was "competent enough" to give him a number over the phone, he could input the data into the METRC system from home. However, appellant stated that Beneleaves did not allow him to do that from home on a regular basis. He was allowed to work from home when he was exposed to COVID, but the company required him to return to the facility at the conclusion of his quarantine period. When asked whether Beneleaves required him to be at the facility Monday through Thursday, appellant responded, "correct." Further, "when did that requirement start?" Appellant stated, "roughly, March or April of 2020."

{¶13} Appellant stated that during his drive from Cleveland to Columbus, he had to take work calls. He took the calls approximately once or twice per week, and each call would last five minutes or less. Appellant recalled two instances where he had to pull over to the side of the road to talk on the phone, but stated this happened "rarely * * * from March to June, maybe two or three times." Appellant did some other work at home for Beneleaves from Friday through Sunday. Appellant spent about two hours per week doing work at home or in the car for Beneleaves. He would also work at the fire department on the week-ends. When asked if the bulk of his work was performed at the facility beginning Monday morning through Thursday afternoon, appellant stated, "correct."

**{¶14}** The trial court issued a judgment entry on July 19, 2022, granting appellee's motion for summary judgment. The trial court found appellant was a fixed-situs employee because the substantive part of his work was done at a fixed site, with only very minimal responsibilities to Beneleaves while he was in his car or at home. Thus, the coming and going rule applied. The trial court further found that none of the exceptions to the coming and going rule applied.

**{¶15}** Appellant appeals the July 19, 2022 judgment entry of the Morrow County Court of Common Pleas and assigns the following as error:

**{¶16}** "I. THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT."

*Summary Judgment Standard*

**{¶17}** Civil Rule 56 states, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the

party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

{¶18} A trial court should not enter summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Inds. Of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

{¶19} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

I.

{¶20} Pursuant to R.C. 4123.54(A), every employee who is injured or contracts an occupational disease in the course of employment is entitled to receive compensation for loss sustained as a result of the disease or injury as provided for in the Ohio Revised Code. R.C. 4123.01(C) provides that in order for an employee's injury to be compensable under the workers' compensation fund, the injury must be "received in the course of, and arising out of, the injured employee's employment." The claimant must show the injury

was received both in the course of, and arising out of, the injured employee's employment. *Fisher v. Mayfield*, 49 Ohio St.3d 275, 551 N.E.2d 1271 (1990). The "in the course of" prong relates to the time, place, and circumstances of the injury. *Id.* The "arising out of" prong refers to the causal connection between the employment and the injury. *Id.*

*Fixed Site Employee*

{¶21} The trial court found appellant was a fixed-situs employee, and was subject to the coming and going rule. Appellant contends he was not a fixed-situs employee and thus not subject to the coming and going rule.

{¶22} The coming and going rule is used to determine whether an injury suffered by an employee in a traffic accident occurs "in the course of" and "arises out of" the employment relationship so as to constitute a compensable injury under R.C. 4123.01. *Price v. Goodwill Industries of Akron, Ohio, Inc.*, 192 Ohio App.3d 572, 2011-Ohio-783, 949 N.E.2d 1036 (5th Dist. Richland 2011). Pursuant to the coming and going rule, an employee who sustains an injury while traveling to and from a fixed place of employment, i.e., fixed-situs, is precluded from participating in the workers' compensation fund. *MTD Products, Inc. v. Robatin*, 61 Ohio St.3d 66, 572 N.E.2d 661 (1991). This is because the requisite causal connection between the injury and the employment does not exist. *Id.*

{¶23} The Ohio Supreme Court set forth the test for determining whether an employee is a fixed situs employee in *Ruckman v. Cubby Drilling, Inc.*, 81 Ohio St.3d 117, 1998-Ohio-455, 689 N.E.2d 917. In determining whether an employee is a fixed-situs employee and therefore within the coming and going rule, the focus is on whether "the employee commences his substantial employment duties only after arriving after at a specific and identifiable work place designated by his employer." *Id.* "An employee's

subjective intent regarding the purposes of [his] travel is not determinative as to whether the injury occurred in the course of and arose out of the employment" because "almost all work requires travel, either as part of the employment duties or as part of a commute. And almost every occasion to travel for work may, at some point, involve both personal and employment purposes." *Friebel v. Visiting Nurse Assn. of Mid-Ohio*, 142 Ohio St.3d 425, 2014-Ohio-4531, 32 N.E.3d 413.

{¶24} Appellant contends the trial court committed error in classifying him as a fixed-situs employee because he was required to work while commuting and his travel time on Monday morning was included within his regular work hours.

{¶25} Courts, including the Ohio Supreme Court, have repeatedly declined to classify an employee as a non-fixed-situs employee when they perform incidental work outside of the work place. *Smith v. Carnegie Auto Parts, Inc.* 8th Dist. Cuyahoga No. 88343, 2007-Ohio-992 (simply because an employee completes some duties at home on a weekly basis does not make the employee a non-fixed-situs employee); *American National Property and Cas. Co. v. Morgenstern*, 10th Dist. Franklin No. 06AP-197, 2006-Ohio-5519 (chiropractor who does paperwork at home but treats patients four days per week in the office is a fixed-situs employee; the coming and going rule applies); *Hughes v. Hughes*, 3rd Dist. Paulding No. 11-2000-11, 2000-Ohio-1937 (writing reports from home does not entitle a chiropractor who treats patients in an office to be a non-fixed-situs employee).

{¶26} For example, the Ohio Supreme Court has held that a teacher who prepared lesson plans at home could not receive workers' compensation benefits for injuries sustained in an auto accident while traveling to and from school because if there were

recovery under those facts, then there could be recovery "in the case of any * * * employee employed in an office, bank, store, factory, or other place of employment who carried home any books, papers, statements, etc. for any purpose at all connected with his duties." *Industrial Commission of Ohio v. Ginert*, 128 Ohio St. 129, 190 N.E. 400 (1934). The Supreme Court has also held that a product control manager at a plant who worked at the plant, but who was on call twenty-four hours a day and took some work home, was a fixed-situs employee. *Lohnes v. Young*, 175 Ohio St. 291, 194 N.E.2d 428 (1963). In *Gilman v. Cambridge Home Health Care, Inc.*, 5th Dist. Stark No. 2008 CA 00211, 2009-Ohio-2842, this Court held that a home health care aide who "commenced her substantial employment duties only after arriving at her patient's residence" was a fixed-situs employee.

{¶27} Appellant cites his testimony that he works approximately two hours per week at home and takes calls in the car during his Monday commute in support of his argument. However, there is no evidence appellant performed his "substantial employment duties" at home or in the car rather than at the Beneleaves facility. When asked if Beneleaves required appellant to be at the facility from Monday through Thursday, appellant stated, "correct * * * [starting] roughly March or April of 2020." Both appellant and Hollenback described the METRC system as involving physically tracking tags and manually typing the information into the system at each stage of the process. Further, appellant stated that, as the extraction manager, he was assigning tasks to other employees each morning. Hollenback stated appellant's job was a "hands-on job on a daily basis." Appellant stated the company did not permit him to input data from home on

a regular basis.  Appellant took approximately two calls per week during his commute, and each call lasted less than five minutes.

{¶28}  Appellant did not have a company car and he was not paid mileage for his drive to and from work.  Further, appellant never testified that Beneleaves required him to answer calls during his commute or work at home on the week-ends.  Hollenback testified appellant had "no work he need[ed] to do at home," and stated appellant was only expected to answer calls during his commute "if he was available."  Hollenback estimated the out-of-office phone calls accounted for approximately 5% of appellant's job duties.  In his testimony, appellant confirmed the "bulk" of his work was done at the facility. Appellant had a fixed and limited place of employment where his duties were performed. "A position such as his is not analogous to that of the salesman, serviceman, or insurance adjuster * * * [where] the very nature of their employment requires them to go from place to place over the public highways, and the traveling to each place to work is necessarily in the course of their employment."  *Lohnes v. Young*, 175 Ohio St. 291, 194 N.E.2d 428 (1963).

{¶29}  Appellant states that, "simply because he [appellant] was required to be in the office most of the time, does not fully establish him as a fixed-situs employee." However, as detailed above, that is not the test as established in *Ruckman*.  Rather, the Ohio Supreme Court has specifically stated the test is whether the employee commences his substantial duties after arriving at the identifiable work place designated by the employer.  As analyzed above, there is no genuine issue of material fact that appellant commences his substantial duties after arriving at the Beneleaves facility.

{¶30} Finally, appellant contends his work arrangement with the company was "revised" when he started arriving at the office at 10:00 a.m. on Mondays and thus he is not a fixed-situs employee. However, both Hollenback and appellant testified that appellant's compensation did not change, and that the arrival of appellant two hours later was solely at appellant's request. Any revision of the employment arrangement was for appellant's convenience, not at the request of the employer. Further, as detailed above, the focus in the fixed-situs employee test remains on where appellant completes his substantial duties. Even after this "revision," appellant commenced his substantial duties only after arriving at the facility.

{¶31} Applying the *Ruckman*, test, we find the trial court properly concluded appellant was a fixed-situs employee and there is no genuine issue of material fact as to appellant's status as a fixed-situs employee subject to the coming and going rule.

*Totality of the Circumstances Exception*

{¶32} The classification of appellant as a fixed situs employee does not end the inquiry. A fixed-situs employee injured before commencing or after ending his or her substantial employment duties at a specific and identifiable work place designated by the employer may establish an exception to the coming and going rule. *Price v. Goodwill Industries of Akron, Ohio, Inc.*, 192 Ohio App.3d 572, 2011-Ohio-783, 949 N.E.2d 1036 (5th Dist. Richland 2011).

{¶33} Appellant argues he falls within the totality of the circumstances exception of the coming and going rule. In analyzing the totality of the circumstances exception, the question is whether there is a causal connection between an employee's injury and his employment, based on the totality of the circumstances surrounding the accident.

*Ruckman v. Cubby Drilling, Inc.*, 81 Ohio St.3d 117, 1998-Ohio-455, 689 N.E.2d 917. The totality of the circumstances test requires analysis of these facts and circumstances: (1) the proximity of the scene of the accident to the place of employment; (2) the degree of control the employer had over the scene of the accident; and (3) the benefit the employer received from the injured employee's presence at the scene of the accident. *Id.*; *MTD Products, Inc. v. Robatin*, 61 Ohio St.3d 66, 572 N.E.2d 661 (1991).

{¶34} Here, the accident was not in close proximity to the facility in Columbus, as appellant states he was twenty-five miles away from the facility at the time of the accident. Appellant contends that since he was closer to the facility than to his home, the proximity factors weighs in his favor. However, the case law is clear that the focus is on the actual, physical distance away from the place of employment, not how far away the employee is from their home. *Ruckman v. Cubby Drilling, Inc.*, 81 Ohio St.3d 117, 1998-Ohio-455, 689 N.E.2d 917 (accident occurred "some" physical distance away from the work site); *Gilman v. Cambridge Home Health Care, Inc.*, 5th Dist. Stark No. 2008 CA 00211, 2009-Ohio-2842 (totality of the circumstances exception did not apply when the accident occurred several miles from the assigned work site).

{¶35} While appellant admits appellee did not control the scene of the accident, he argues that appellee was in control of the scene with regards to appellant being required to work at that specific time. However, appellant does not cite to any case law to support this assertion. Case law from the Ohio Supreme Court focuses solely on whether the employee had control over the public street on which the accident occurred. *MTD Products, Inc. v. Robatin*, 61 Ohio St.3d 66, 572 N.E.2d 661 (1991). As stated by the Supreme Court, the "proper scrutiny entails the amount of control the employer had

over the situs of the injury, and not the degree of control the employer had regarding the actions of its employees." *Fisher v. Mayfield*, 49 Ohio St.3d 275, 551 N.E.2d 1271 (1990). Further, this Court has focused on whether there was any evidence that the employer exercised control over the public roadway upon which the accident occurred. *Gilman v. Cambridge Home Health Care, Inc.*, 5th Dist. Stark No. 2008 CA 00211, 2009-Ohio-2842 (totality of the circumstances exception did not apply as the employer had no control over the roadway several miles from the office where the accident occurred); *Stair v. Mid-Ohio Home Health Ltd.*, 5th Dist. Richland No. 2010-CA-0114, 2011-Ohio-2351 (accident occurred on a sidewalk under the employer's control, not on a public roadway).

{¶36} Cases in which the totality of the circumstances exception applies are those where the accident occurs at a location where the employer physically controls the scene. *Wyatt v. Autozone, Inc.*, 3rd Dist. Van Wert No. 15-03-05, 2003-Ohio-6706 (totality of the circumstances exception applied when the injury occurred in the parking lot of the store where the employee was working at that time and the parking lot was under the control of the employer); *Owens v. Giant Eagle, Inc.*, 8th Dist. Cuyahoga No. 110666, 2022-Ohio-192 (employer had control over the scene because the accident occurred inside the store); *Stair v. Mid Ohio Health Ltd.*, 5th Dist. Richland No. 2010-CA-0114, 2011-Ohio-2351 (sidewalk where accident occurred was under the employer's control).

{¶37} Finally, appellant argues the third factor weighs in his favor because Beneleaves benefitted from his travel time, as he was working during this period of time. However, travel was not an integral part of appellant's employment, and Beneleaves did not reap the benefit of appellant's travel like someone who traveled like a salesman or a traveling nurse. Further, the undisputed evidence demonstrates the fact that appellant

traveled from 8:00 a.m. to 10:00 a.m. benefited appellant, not Beneleaves. In his deposition testimony, appellant stated the change of his arrival at the facility from 8:00 a.m. to 10:00 a.m. on Mondays was solely due to appellant's request. Appellant stated the move was "his request" and "his negotiation" because he was "able to work better hours at the fire department as well as [he] didn't have an interest in continuing working 40 hours for the company." When asked if it was fair to say he wanted to work less and wanted to work more for the fire department, appellant responded, "Yeah. That's probably reasonable * * * I was trying to negotiate a better deal for me." Hollenback confirmed appellant asked for the change. Hollenback stated he "picked up the slack" from 8:00 a.m. to 10:00 a.m. on Monday mornings when appellant was not there.

{¶38} We find the trial court did not commit error in finding the totality of the circumstances exception does not apply. Appellant was traveling on a public roadway approximately twenty-five miles away from the assigned work site. There was no evidence to establish Beneleaves had any control over appellant's manner of travel. Beneleaves did not reap a benefit of appellant's travel. Rather, appellant's ability to come in late every Monday was solely for his own convenience.

{¶39} Based on the foregoing, appellant's assignment of error is overruled.

{¶40}  The July 19, 2022 judgment entry of the Morrow County Court of Common Pleas is affirmed.


By Gwin, J.,

Wise, Earle, P.J., and

Hoffman, J., concur